## City of Winchester v. Winchester Water Works Co.

(Decided June 20, 1912.)

### Appeal from Clark Circuit Court.

1. Municipal Corporations—Water Works Company—Contract With City—Validity · of—Taxation—Exemption From.—A contract between a city and a water works company, entered into before the adoption of the present constitution, by which the latter agrees each year to furnish water for public buildings, sprinkling the streets, etc., in a sum equal to the amount of taxes which may be levied and assessed against the property of the company, in the absence of evidence showing bad faith on the part of the contracting parties, or that the provision in the contract was an attempt to exempt the property from taxation, or that the service rendered is disproportionate to the taxes, is not invalid.

2. Contracts—Authorized Indebtedness—Contract in Excess of—Pleading—Proof.—Where a contract is assailed on the ground that it exceeds the indebtedness authorized by the charter of a municipality, it is necessary to plead and prove such fact.

PENDLETON, BUSH & BUSH, HAZELRIGG & HAZELRIGG, F. H. HAGGARD and J. SMITH HAYS for appellant.

JOUETT & JOUETT, HINES & NORMAN and H. H. MOORE for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Subsection 15 of section 6 of "An Act to amend and reduce into one the several acts relating to the charter and amendments thereto of the town of Winchester," Vol. 1, p. 350, Acts of 1881-2, reads as follows:

"The Board of Councilmen of said town, and their successors in office, shall have power to contract debts,

by borrowing money or otherwise, for municipal purposes, to be used within said town, in any sum not exceeding one thousand dollars, and to give their corporate obligations to pay the same, which shall be enforceable as other similar corporate obligations, never, however, to bear a greater rate of interest than ten per cent; provided, however, that whenever said board shall desire to create a debt, or borrow money in any amount exceeding one thousand dollars, they shall have power by submitting it to a vote of the qualified voters of said town; and if a majority of those voting shall direct such loan to be created or debt incurred, then the Board of Councilmen are authorized to act; and to ascertain the will of the voters, a poll may be opened in the same way as if for the election of mayor and board of councilmen, and under similar notice."

By an act of April 22, 1882 (Vol. 2, p. 824, Acts of 1881-2), subsection 15 of section 6, Act of February 2, 1882, was amended by substituting the words "five thousand dollars" for the words "one thousand dollars" wherever the last named words occurred in said section.

By an act of the General Assembly, approved May 3, 1890, it was provided:

"That subsection fifteen of section six of said act be, and it is hereby, so amended as to authorize the Board of Councilmen of said town to contract with any person, company or corporation to supply said town with water for all purposes, and to incur a debt or liability to pay for same, as provided in said subsection; and to levy and collect a tax on the citizens and property of said town sufficient to discharge said indebtedness or liability as taxes are now levied and collected in said town.

"That the action of said board in submitting the question as to whether it shall be authorized to contract for a water supply for said town to the voters of said town, at an election to be held on the twenty-sixth day of April, one thousand eight hundred and ninety, or at such times as shall hereafter be fixed by said Board, as provided in said subsection fifteen, and the election held in pursuance thereof, shall be valid and binding to the same extent as if it had been ordered after this act takes effect and in pursuance and by virtue of its authority."

Section 8 of the act incorporating the Winchester Water Works Company (Chap. 1413, Acts of 1890), provides, that the corporation

"Shall furnish water to the city of Winchester for

the extinguishment of fire, cleaning streets and other purposes, upon such terms as may be agreed upon by said city and said corporation."

On April 11, 1890, the General Council of the city of Winchester, passed the following resolution:

"On motion it is ordered that there be submitted to the qualified voters of the town of Winchester at an election to be held on the 26th day of April, 1890, at the usual voting places, to be opened and held in the same manner as elections for councilmen, and under similar notices, the question as to whether the Board of Council of said town shall be authorized and empowered to incur a debt or liability of not exceeding $3,000.00 per annum, and to enter into a contract for any number of fire plugs with any corporation, company or individual that will undertake to build an approved system of waterworks, in said town, and to supply said town and the citizens thereof at all seasons of the year with an abundant supply of pure, wholesome water for city, domestic and manufacturing purposes; provided, that any such contract entered into shall contain a provision allowing said town to purchase said waterworks at an appraised value at intervals of not more than ten years."

Pursuant to the above resolution, an election was held on April 26, 1890, which resulted in a vote favorable to the proposition embodied in the resolution.

On September 19, 1890, Messrs. Wheeler and Parks, doing business in Boston, in the State of Massachusetts, their associates, successors and assigns, entered into a contract with the city of Winchester, by which they were granted the privilege of building, maintaining and operating a system of water works for the purpose of supplying the citizens of Winchester with water suitable for fire, domestic, municipal and other purposes, and also the privilege of laying and maintaining water pipes in the streets of the city. This contract provided for 65 hydrants, for which the city was to pay an annual rental of $3,000. The contract also contains numerous other provisions which it will be unnecessary to set out.

Section 16 of the contract is as follows:

"For the consideration, specially mentioned in this section, to furnish water for five watering troughs, one trough to be located near the courthouse, and so arranged as to be supplied by a constant stream of water, and four watering troughs at such points on the line of piping as may hereinafter be designated by the city

council, said troughs to be supplied by self closing faucets.

"All the above described troughs to be furnished by and at the expense of the city, and the use of said water at said troughs to be so controlled by ordinances of the City Council as to prevent any persons from carrying water away for use elsewhere. It is agreed to furnish a supply of water for all public buildings and school houses owned by the city; also water for sprinkling the streets, the same to be taken from suitable standpipes erected for the purpose; also water for flushing gutters, said flushing to be done by some responsible person to be appointed by the city council; also use of water for the use of the fire department for practice and drill.

"All the connections for the above uses to be made at the expense of the city. The above water to be furnished for such amount annually as shall equal the amount assessed by the city in taxes upon said system of water works and the franchises relating thereto."

By assignment regularly made, appellee, Winchester Water Works Company, succeeded to all the rights and privileges conferred by the contract in question.

During the year 1891, another vote of the people was had, by which the further sum of $280 per year was authorized to be expended for additional fire plugs.

In conformity with the contract, the Winchester Water Works Company erected a plant, and since that time has performed all services contemplated by the contract.

On September 4, 1908, the city of Winchester brought this action against the Winchester Water Works Company to recover taxes for the year 1905, amounting to the sum of $782.65. The Winchester Water Works Company filed an answer, set-off and counterclaim, and after setting forth the 16th section of the contract between it and the city, pleaded that for every year since the assignment of the contract to it, and for the year 1905, it had furnished to the city of Winchester the water required by section 16, which water was accepted by and used by the city, and that it had thereby paid to the city the full amount of the taxes due for the year in question. It further pleaded that if the contract in question was not enforceable, that it had furnished to the city for the year 1905 water of the value of $1,123.91, and prayed judgment for the difference between that sum and the amount of taxes claimed, or the sum of $341.41. A de-

murrer to the answer was overruled. The city filed a reply, denying that the Winchester Water Works Company had furnished water for the year 1905 of the value of $1,123.91, or of any sum in excess of $300. It further pleaded that the city was not authorized to incur an indebtedness for water service in excess of $3,280, and that the contract, in so far as it imposed an indebtedness in excess of that sum was ultra vires and void. By paragraph 3, it pleaded that by section 16 of the contract, it was attempted to exempt and release the Water Works Company from taxation, and that such exemption was contrary to the Constitution and laws of the State. A demurrer to the reply was sustained, and the petition then dismissed. From that judgment, the city of Winchester appeals.

The contract in question was made before the adoption of the present Constitution, and if valid under the old Constitution, none of its obligations could be impaired either by the present Constitution or any laws enacted after the contract was made. Slade v. City of Lexington, 141 Ky., 214.

Section 1, Article 13, of the old Constitution, provided:

"That all freemen, when they form a social compact, are equal, and that no man, or set of men, are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services."

Under this section, an exemption from taxation, except in consideration of public services, is an exclusive and separate privilege, and is therefore condemned. City of Dayton v. Bellevue Water & Fuel Gas Light Company, 68 S. W., 142. The question before us, then, is does the contract in question exempt the Water Works Company from taxation?

In Maine Water Co. v. Waterville, 93 Maine, 586, 49 L. R. A., 294, the court had under consideration a contract between the water company and the city, by which the city agreed to pay the water company for certain water services "a sum of money annually which shall be equal to the taxes annually assessed against said company by said city on such a portion of the company's valuation as shall be in excess of $25,000."

The court, after considering cases involving the validity of exemptions from taxation, said:

"But in the case under consideration the contract neither provides for nor means exemption from taxation,

if the consideration for the agreement upon the part of the city is reasonably adequate. The term 'exemption' implies a release from some burden, duty or obligation."

After conceding that such a contract might be merely intended to cover with the semblance of validity an illegal attempt to exempt property from taxation without a fair return therefor, the court said:

"But what we hold is that a municipality may, for a reasonably adequate consideration, in the way of service rendered to it for municipal purposes, agree to make compensation therefor, for a term of years not unreasonably long, either in whole or in part the amount that the company performing the service may be obliged to pay as taxes assessed upon its property. We think that this conclusion is sustained both by reason and the weight of authority."

In the case of Cartersville Improvement, Gas & Water Co. v. Cartersville, 89 Ga., 683, the court, in construing a similar contract, announced the following rule:

"While a city cannot exempt a gas company from municipal taxation, it can contract to pay for gas a stipulated sum per lamp, and in addition thereto, a sum for all the lamps supplied equivalent to the amount of taxes imposed upon the company, provided this additional sum is a fair and just allowance to compensate for the actual value of the light service, and the stipulation is bona fide, and not in the nature of an evasion of the law prohibiting exemption from taxes."

In Utica Water Works Company v. Utica, 31 Hun., 426, a contract not unlike the one herein involved being considered by the court, the court said:

"The effect of the contract is not to relieve the company from the payment of taxes in whole or in part, at the expense of other taxpayers, but it is to adopt the amount of taxes paid by the company as a partial measure of compensation for the water supplied by it."

In Bartholomew v. Austin, 85 Fed. 359, decided by the Circuit Court of Appeals of the Fifth Circuit, in an opinion by Circuit Judge Pardee, the court upheld a contract between a water company and the city of Austin, which gave the city the right to use water, free of charge, for the purpose of flushing gutters and sewers and for certain public buildings and for public watering places, and then provided that "in consideration of all of which the property of the city water company shall be, and the same is hereby, exempted from municipal

taxation for the full term for which the contract is executed.'' The court said:

"We do not construe the contract as granting an exemption from taxation. 'Exemption' means free from liability, from duty, from service. It is a grace, a favor, an immunity; taken out from under the general rule, not to be like others who are not exempt; to receive and not to make a return. This being the meaning of the term, the transaction presented in section 11 is not an exemption from taxation. The city needed the water for the several purposes named. To supply it required time, expense and labor. These things were of value. The taxes to be levied were to be legal obligations for money. The obligations were of value. On a comparing of values, the parties being competent to contract, it was concluded that the values were equal, and the one should be off-set by the other. There is no claim that the one value was not as great as the other. No imposition on the one hand, no favoritism on the other, can be inferred."

In Grant v. City of Davenport, 36 Iowa, 396, the court, in considering a contract similar to the one herein involved, said:

"If we place the same construction upon the ordinance as the counsel for appellants seem to, we should probably conclude with him in his legal positions and conclusions thereon. But it seems to us that when the whole ordinance is construed together it does not amount to an exemption from taxation. It, in effect, applies the taxes as they would otherwise become due, in part payment of, or in consideration for, the water rent. The city pays the amount of money specified and the taxes upon the franchise and the property required for the management of the works, as water rent. It might have required the payment of the taxes, and then returned the amount as part pay for water rent. The manner of doing it cannot defeat the power to do it."

In Ludington Water Supply Co. v. City of Ludington, 78 N. W. (Mich.), 558, the contract required the water company "to furnish a free supply of water for the city hall, for the fire department displays, for watering troughs then in use, for drinking fountains, for flushing sewers, etc.," and then provided that the water company should pay taxes up to a certain valuation for certain designated years, and that all in excess of said agreed amounts the city would itself pay. In upholding this part of the contract, the court said:

"It is contended that the provisions relating to taxes are invalid, for the reason that the city has no power, under its charter, to exempt property from taxation, and that this contract is an attempt to exempt the property of the plaintiff in excess of a certain amount from its share of the public burden. * * * The city no more exempts the property of the plaintiff from taxation by such an agreement than does the mortgagor who agrees to pay the taxes levied against the mortgaged property exempt the mortgaged property from taxation and possibly neither possesses the power to exempt property from taxation. Certainly neither has done it. The two cases cited by the learned circuit judge: Cartersville Imp. Co. v. Mayor, et al., of City of Cartersville (Ga.), 16 S. E., 25, and Grant v. City of Davenport, 36 Iowa, 396 —not only support the plaintiff's position in this case, but go further than it is necessary for us to go to sustain the plaintiff's contention. We need not, and therefore do not, determine what would be the effect of a definite agreement to exempt plaintiff's property from taxation. We do hold that an agreement to pay a portion of the taxes which may be assessed against plaintiff, made upon good consideration, is not an exemption from taxation in any proper legal sense."

In Monroe Water Works Co. v. City of Monroe, 85 N. W., 685, where the provision of the contract under consideration was almost identical with the one in the case at bar, the court said:

"The city was also to have the free use of hydrants for flushing gutters and sewers, and free water for public schools and other city buildings, for certain drinking fountains, and for sprinkling purposes. In consideration for such services the city also agreed 'to pay each year to said grantee, in addition to the hydrant rentals herein specified, a sum equal to the amount of State, county and city taxes which may be levied upon such portions of said water works plant as is located on the streets and public grounds.' "

After holding that an agreement to exempt would be void, the court further said:

"The rule is equally well established that it is competent for a city and a company to agree that as the price of services to be rendered, the city will pay a sum equal to the amount of municipal taxes to be levied. Ludington Water Supply Co. v. City of Ludington, 119 Mich., 480, 78 N. W., 558; Cartersville Improvement, Gas &

Water Co. v. City of Cartersville (Ga.), 16 S. E., 25; Grant v. City of Davenport, 36 Iowa, 397. Of course, it must appear that the sum so stipulated to be paid is a fair and just allowance to compensate for the actual value of the services to be rendered, and that the stipulation is bona fide, and not in the nature of an evasion of the law against exemption from taxes. The stipulation in this case is not subject to this objection. The water company agrees to furnish water for flushing gutters and sewers; also for school and public buildings, drinking and display fountains, and for sprinkling streets in the business portion of the city. In consideration thereof, the city is to pay annually a sum equal to certain taxes to be levied. There is nothing in this arrangement that we can perceive suggesting any exemption from assessment or taxation. On the contrary, it expressly contemplates the levy of a tax, and provides merely that, in addition to hydrant rents, the city shall pay a varying sum for the other services mentioned. If the agreement is sufficiently definite to be enforced, no reason is apparent why the city should not live up to its agreement.''

And in the case of City of Frankfort v. Capital Gas & Electric Light Co., 29 S. W., 855, 16 R., 780, there was a sale by the city of its gas plant. The purchaser agreed to pay a certain price and to supply the city and its citizens with gas at a fixed rate, and the city agreed that the plant should be exempt from city taxes. It was further agreed that if this exemption should be adjudged invalid, the city would itself pay the taxes. The contract, like the one in controversy, was made under the old Constitution. In upholding the contract, the court said:

''The contract made appears to be reasonable; there is no injustice or oppression on the citizens or the public by reason of any of its provisions; and, as this action only involves the right to recover for the benefits received by the city under the contract, no case is made out for a rescission, even if the pleadings sought the relief. It is manifest that these parties, when entering into the contract, regarded this exemption as forming a part of the consideration, and they may have known or believed that the city had no power to make the exemption, and for that reason inserted the clause by which the city was to sustain the loss, by adding to the cost of lighting the streets the amount of taxes required to be paid. It was not an agreement against public policy or public

morals, and if the exemption was eliminated from the contract, the chancellor would compel the city to add to the cost of lighting the streets so as to execute the intention of the parties. Exemption from taxation is held invalid, because it increases the tax on property not exempt; but here if the citizen is required to reimburse the appellee, the burden remains the same, for if taxes are collected from the appellee, the city must pay them back. The right of the city to make a disposition of its gas plant is conceded, and, if so, the city council were the sole judges of the consideration to be paid; and this exemption being an essential part of the consideration, its terms should be enforced. The appellant has been enjoying the benefits of the contract for nearly ten years; has recognized during this period its obligation not to collect taxes of the appellee; and we are aware of no rule or law or public policy that would prevent one, whether a natural or artificial person, when selling property of which it at the time is the owner, to agree to pay the taxes due, or to thereafter become due on the property sold; and if a part of the consideration, the contract should be executed. This is not the grant of a mere privilege, with an exemption from taxation in the exercise of corporate rights and the use of corporate property, but a sale by the city of its property to these parties, upon a consideration of $40,000.00, with other covenants contained, and the agreement on the part of the city to pay the taxes. This is, in fact, the agreement between the contracting parties, and that it must have been regarded as an essential feature of the contract is too plain for argument.''

Applying the foregoing principles to the facts of this case, we find that the water company agreed to furnish for each year an amount of water for certain municipal purposes, equal to the amount of taxes that might be assessed against its property. The contract, therefore, did not provide for exemption from taxation. The water company was not released from the burden of paying the taxes. Under the contract, it was to render services equivalent to the amount of taxes. It did render these services; therefore, it paid the taxes. There is no allegation in the pleadings that the services rendered were at all disproportionate to the amount of taxes involved. The parties to the contract evidently contemplated that as the town grew, the amount of water required for sprinkling the streets would be increased. To meet the

required service, it would be necessary to increase the facilities of the water works plant. Under the contract, therefore, the amount of the service and the amount of the tax was necessarily a variable quantity, with a reasonable probability that they would each increase in like proportion. Realizing this fact, the city and the water company had the right to make the contract. There is nothing in the record to show a want of good faith, or that the contract is inequitable, or that it imposes an unjust burden on the other taxpayers. In the absence of evidence tending to show that the service is disproportionate to the amount of taxes, we will not assume that the contract was simply an attempt to exempt the water company from taxation. The contract having been entered into in good faith, and having been carried out by the parties for a long term of years, we conclude that any doubt in regard to the power of the city to make the contract should now be resolved in favor of the contract. We therefore conclude that the contract is valid.

The rule announced in City of Dayton v. Bellevue Water, &c., Co., supra, does not conflict with the rule herein announced. In that case there was an attempt to exempt the water company from taxation.

But it is insisted that the contract in question imposed upon the city a debt in excess of that authorized by the vote of the people, and by its charter. Under its charter at the time the contract was entered into, the city had the right to contract an indebtedness not exceeding $5,000. Even if the agreement on the part of the city to pay for the service contracted to be performed by the water works company, a sum equal to the amount of taxes to be assessed against the company's property, be considered a debt, and even if a debt of this character is within the contemplation of the provision of the charter, questions which we deem it unnecessary now to decide, the city has failed to allege or to show that by the contract in question an indebtedness exceeding the limit of $5,000 was imposed upon the city. Having a right to contract an indebtedness of $5,000 for municipal purposes, and the furnishing of water for sprinkling streets, etc., being a municipal purpose (Board of Councilmen of City of Frankfort v. Commonwealth, 29 R., 699), it was incumbent upon the city to allege and prove that the indebtedness authorized by its charter was actually exceeded. City of Louisville v. Gosnell, 22 R., 1524. In the

absence of allegations and proof to this effect, we will not assume that such is the case.

Judgment affirmed.