## Gee v. Commonwealth.

(Decided January 16, 1918.)

## Appeal from Allen Circuit Court.

1. **Criminal Law—Instructions—Appeal and Error.**—Instructions which are not embraced in tue bill of exceptions, nor identified and made a part of the record by an order of court cannot be considered on appeal.

2. **Criminal Law—Transcript of Evidence—Bill of Exceptions.**—A transcript of the evidence made by the official stenographer who certifies that it contains all the evidence heard upon the trial, and which has been approved and attested by the judge of the court as required by the statute, and filed as a bill of exceptions and made a part of the record by an order of court, may be considered as a bill of exceptions.

3. **Criminal Law—New Trial.**—A new trial will not be granted upon the ground of newly discovered evidence where the new evidence can be used only to impeach witnesses who have testified upon the trial, or where the proposed new evidence is not important and reasonably calculated to have a decisive influence upon the verdict upon another trial.

A. J. OLIVER, EARL HUNTSMAN and BRADBURN & BASHAM for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

From a judgment, of the Allen circuit court, adjudging him to be guilty of the crime of wilful murder, and to imprisonment for life, as the punishment for the crime, the appellant, Porter Gee, appeals to this court and seeks a reversal of the judgment, because of alleged errors made by the trial court to the prejudice of his substantial rights as follows:

First: The failure of the court to instruct the jury upon all the law pertaining to the case.

Second: The verdict was against the evidence and contrary to the law, in that all the evidence showed, that the crime was not committed with malice aforethought.

Third: The Commonwealth's attorney, in the closing argument to the jury, made improper remarks, not authorized by the evidence, which were calculated to inflame the passions of the jury against him.

Fourth: The court erroneously excluded from the consideration of the jury evidence offered in his behalf.

Fifth: The court erred in overruling his motion for a new trial, upon the ground of evidence discovered after the trial, which was important and material for him.

(a). This court has no means of determining, as to whether or not the court, below, failed to instruct the jury properly, as to all the law pertaining to the case. A formal bill of exceptions, such as is contemplated by the code, was not filed nor made a part of the record. It seems, that the transcript of the evidence made by the official stenographer, who certified, that it contained all the evidence heard upon the trial, was filed as a bill of exceptions, and this bill of evidence was examined, approved, and attested by the judge of the court, as provided by section 4644, Kentucky Statutes, and may be treated as a bill of exceptions in the case, in the absence of a formal bill. McGeever v. Kennedy, 19 R. 845, 42 S. W. 114; Sou. Ry. v. Thurman, 25 R. 804; Louisville Bridge Co. v. Neafus, 110 Ky. 571; Mann v. Moore, 112 Ky. 725. Considering the transcript of the evidence as the bill of exceptions, it does not contain any of the instructions given, offered or refused upon the trial. Certain writings purporting to be the instructions given upon the trial are copied into the record by the clerk of the court, who made the transcript of the record, but neither of these is identified by an order of the court, as an instruction given upon the trial, and if it could be assumed that these were instructions, which were given upon the trial, there is nothing from which to conclude that these were all that were given. Section 282, Criminal Code, provides, that the exceptions in a criminal trial must be shown upon the record by a bill of exceptions, which must be "prepared, settled and signed, as provided in the Code of practice in civil cases." Upon appeals in civil cases, it is well settled, that instructions, before they can be considered, must be made a part of the record, either by being included in a bill of exceptions or else made a part of the record by an order of the court, and where they are not made a part of the record in one of the ways stated, they can not be considered, although the clerk may copy, what purports to be them, into the transcript. The schedule in the instant case, does not direct the clerk to copy the instructions, and the writings copied by him, as purporting to be instructions,

are not made a part of the record by either a bill of exceptions or by order of the court. Hence, in the absence of any showing to the contrary, it must be presumed that the court properly instructed the jury regarding the entire law applying to the facts of the case. Johnson v. Postal Telegraph Co., 20 R. 1822; Tinsley v. White, 54 S. W. 169; Meadors v. Turpin, 4 Met. 94; Haggin's Admr. v. L. & N. R. R. Co., 38 S. W. 876; Forest v. Crenshaw, 81 Ky. 51; Neaux v. Neaux, 81 Ky. 475; Gambrell v. Gambrell, 113 S. W. 885; Rogers v. Zumbiel, 114 S. W. 323.

(b). All the evidence does not show that the homicide was committed by appellant without the promptings of malice and in a sudden affray or in sudden heat of passion, so as to render a verdict and judgment against him for murder, contrary to the law and evidence. There are facts proven, from which it can be inferred, that appellant had armed himself for the purpose and was lying in wait for the victim of the homicide, and in addition thereto, the declarations and conduct of the appellant, at the time of the slaying, strongly tend to prove, that he was prompted in his actions by a premeditated malicious purpose, and which made it the duty of the court to submit the issue of malice to the jury, and which it is to be presumed, that it did.

(c). The statements of the Commonwealth's attorney, in the closing argument, about which complaints are made, are not embraced in a bill of exceptions, as they properly should have been, and there is no certification by the trial judge as to what was said by the Commonwealth's attorney, or the actions of the counsel for the appellant or the court thereon, but the statements are set out in the grounds for a new trial, and the fact, that they were made, is supported by the affidavit of the appellant, the truth of which is not controverted. The grounds for a new trial, which are sworn to by the appellant, are a part of the record and may be considered, although not embraced in the bill of exceptions, as the ruling of the court thereon appears upon the record. Warran v. Nash, 24 R. 479. One of the statements made by the Commonwealth's attorney was: "Porter Gee claims that he was looking after his family and wanted to protect his daughter, as a reason for objecting to deceased keeping company with his daughter, when the fact is, he doesn't live with his wife and daughter, he brought a suit for divorce from his wife, I filed an answer, he then dismissed it."

To the making of the above statement the counsel for appellant objected, and the court said to the jury, that there was "nothing in the record to that effect." The bill of exceptions, however, does show that appellant did not live with his wife and daughter, and had not done so for about four years, although he claimed that he contributed to the maintenance of his daughter. The statement by the Commonwealth's attorney, that appellant had brought a suit against his wife for divorce, and upon the filing of an answer by her, had dismissed his suit, is not supported by anything in the record, and was improper and should not have been made, but in the light of the fact, that appellant did not claim, that, he was present at the place of the homicide for any reason connected with his wife, or that the trouble had its origin in anything connected with her, and the prompt ruling of the court, when the objection was made, though the ruling of the judge was not as definite and extended as it should have been, it does not appear that the jury could have been improperly influenced by the statement to disregard the appellant's defense. His defense was, that he was acting in self-defense against a threatened attack by the deceased, on account of a statement made by him to his daughter with reference to her keeping company with the deceased. Nothing prejudicial to the appellant could be inferred from the fact, that he had sued his wife for a divorce, and thereafter had dismissed his suit, more than could be inferred from the bare fact, that he and his wife had separated and that he did not live with her. Unfortunately, it seems that it is almost impossible to hold a criminal trial without some one connected with it doing something, which should not have been done, but this court is authorized to reverse judgments of conviction for errors, which appear upon the record, when, upon a consideration of the whole case, it appears that the substantial rights of the accused have been prejudiced by the error or misconduct. Section 340, Criminal Code. The other remarks alleged to have been made by the Commonwealth's attorney, and which are complained of, were not objected to by the appellant nor his counsel, and for that reason the court did not rule thereon, and can not avail anything upon a motion for a new trial or appeal.

(d). Counsel do not point out in the briefs any evidence material to the issues offered by appellant, which

was excluded by the court, and a reading of the record fails to disclose any error of that kind.

(e). The reason chiefly relied upon for reversal of the judgment is, that the court erred in overruling the motion for a new trial, with reference to the fact, that material and important evidence for appellant had been discovered after the verdict of the jury. This alleged evidence is fully set out in the grounds for a new trial, and in affidavits filed therewith, and consists in part of the alleged ability to prove by one George Hill, who was a witness for appellant upon the trial, that after the trial, one Mark Antony, who was a witness against accused, said to Hill, that he (Antony) had sworn to a lie at the trial, in that he testified that he, Gary Owens and deceased were not under the influence of intoxicants and, together, drinking at an entertainment at Joe Thomas' house just preceding the homicide, when in fact they were drinking and that he had since stated to the Commonwealth's attorney that he had sworn falsely with reference to the fact of his condition at the time of the homicide. The Commonwealth's attorney filed his affidavit, which was to the effect, that Mark Antony had had no conversation with him since the trial, and was absent from the county at that time and an affidavit from him could not be obtained. Mark Antony, it seems, did testify upon the trial that he and Gary Owens and the deceased did not, together, drink intoxicants upon the evening of the homicide and preceding it at Joe Thomas' house nor elsewhere, and that he had not drunk anywhere upon that evening and neither had Owens nor deceased to his knowledge. It was, however, proven by two or more witnesses, that Antony, Owens and deceased were seen together at Thomas' engaged in drinking from a bottle on that occasion, and that their actions and the odor from them indicated that they were under the influence of intoxicating liquors. The proposed new evidence of Hill could be used only to impeach the testimony of Antony, which would not justify the setting aside of the verdict. As a general rule, a new trial will not be granted on account of newly discovered evidence, which can be used only for impeaching witnesses, who have testified at the trial. Crouch v. Commonwealth, 172 Ky. 471; Price v. Thompson, 84 Ky. 219; Chambers v. Chambers, 2 A. K. M. 348; Ellis v. Commonwealth, 146 Ky. 715; Riperdam v. Scott, 1 A. K. M. 151; Hays v. Commonwealth, 140 Ky. 184.

The other newly discovered evidence relied upon for a new trial is, that which it is alleged will be given by Louis Pardue, W. F. Pardue and J. A. Renfro. It is to the effect, that on Tuesday, Wednesday or Thursday, following the homicide on the Saturday, preceding, Louis Pardue discovered a 32 caliber pistol in the yard surrounding the dwelling house of one Garrison, at the rear of the office building of the Allen County Home Telephone Central office. The point at which the pistol was found, was on the opposite side of Main street from where the homicide occurred, and at a distance of about one hundred and fifty feet from the place of the homicide. The pistol, at the point where it was found, was in plain view of the rear door of the telephone office building, which was daily used for egress and ingress by employees of the company and many other persons, and was, also, in plain view of persons passing along the concrete side walk upon the street upon the west side of the building, and was very near to the side walk, as well as the rear door of this building. One side of the handle of the pistol was missing from it when it was found, but it does not appear from the affidavits whether the pistol was then loaded or not. Renfro's affidavit stated that the pistol was found within a day or two days after the homicide; Louis Pardue says that he found it on Tuesday, Wednesday or Thursday after the homicide, while W. F. Pardue states that it was found on Thursday after the homicide. The evidence failed to show that deceased had a pistol in his possession or upon his person, when examined directly after he was instantly killed. The appellant testified, that at the time, he shot and killed the deceased, he did not see any pistol upon him or in his hands, although he says that he stood and looked at him for a brief space of time after having shot him. He, however, says that deceased removed one of his gloves and moved his right hand toward his side, immediately after which, he shot him. The evidence by Mark Antony and Gary Owens, two negro boys, was to the effect, that they were nearby and immediately approached the body where it was lying, and then started to the telephone office to call a physician, and when in the middle of the street, Antony turned back toward the body, while Owens went to the telephone office and attempted to call the physician. Other persons gathered at the dead body within the briefest possible time after the shooting. An-

tony and Owens both testify, that they did not touch the body, and did not see any pistol about it. It was, also proven that on Tuesday, preceding the homicide, two pistols, one of 38 caliber and the other of 32 caliber, were lying upon a table at the house of one Owens, where deceased lived, and when deceased was told by the witness, that if appellant objected to his attentions to his daughter, he should not go with her, that deceased seized one of the pistols and said: "Dam Porter Gee, I have his difference." It was, also, proven by three witnesses, that on the Saturday night upon which he was killed, and at the house of Joe Thomas, a very short time preceding his death, he had a pistol in his overcoat pocket, and when he left there, that he removed the pistol from his overcoat pocket and placed it in his rear pants pocket, in the presence of one or more of these witnesses. These witnesses all appear to be relatives of the accused. The theory now urged by the appellant is, that, when deceased was shot and fell upon the side walk, Antony and Gary Owens immediately approached him, and that one of them took the pistol from his pocket and that Owens crossed the street to the telephone office and threw the pistol into Garrison's yard, and it is insisted, that the proof of its finding several days thereafter ought to be admitted to rebut the evidence that he was unarmed at the time he was shot and killed. In addition to the improbability, that, the pistol could have lain in the exposed place in which it was, and upon Main street, in a town containing the population of Scottsville, during Sunday and Monday and probably Wednesday and Thursday, without discovery, there is no kind of evidence or any fact from which it could be inferred, that the pistol found by Pardue was ever owned or had by the deceased. The witnesses who testify to deceased having a pistol, at the times and places, above stated, do not mention the fact, that the pistol had by him, if he had one, had missing from it one side of the handle, and there is nothing from which it could be identified as ever having been in the possession of the deceased. The theory advanced by the appellant as to how the pistol got into Garrison's yard is not based upon any evidence, but is in fact rebutted by all the evidence upon the subject. It might as reasonably be inferred, that the pistol found by Pardue had been placed there by any other person or had been lost there by some other person, as to attribute it

to being placed there by the witness, Owens, and it would be as reasonable to infer, that the pistol was one owned by some other person, as that it was owned or possessed by the deceased. In Couch v. Commonwealth, *supra*, it was said:

"It is, also, well settled, that newly discovered evidence, which will authorize a new trial, must be of such character as to be reasonably calculated to have a decisive influence upon the evidence to be controverted by it, and a new trial will not be granted if it is doubtful whether it will have any decisive influence upon the result of another trial. Hays v. Commonwealth, 140 Ky. 184; Ellis v. Commonwealth, 146 Ky. 715; Allen v. Perry, 6 Bush 85; Mercer v. Mercer, 87 Ky. 21."

Newly discovered evidence, to justify the setting aside of a verdict and judgment, must be of such a "permanent and unerring character as to preponderate greatly, or have decisive influence upon the evidence to be overturned by it, and especially does this rule obtain with respect to parol testimony." If it could be shown that the pistol found in Garrison's yard was the one, which deceased owned or had been in his possession preceding the homicide, a different state of case would be presented, but under the facts, as developed, by the affidavits filed, setting forth the newly discovered evidence, if such evidence was presented upon another trial, before it could be beneficial to the accused, it would necessitate, upon the part of the jury, a guess that it was the pistol of deceased, and that three or four friendly witnesses of appellant, who testified to having seen deceased with a pistol, never observed that it was minus one-half of the handle; that some one took it from him, after his death, and threw it into the yard, and that it lay there exposed to the view of all persons passing that way, and that no one saw it until the third and probably until the fifth day after it was placed there. It is impossible to see how that such a state of facts would be reasonably calculated to have any decisive influence upon the result of a trial.

The judgment is therefore affirmed.