## Hale v. Commonwealth.

(Decided September 23, 1919.)

### Appeal from Laurel Circuit Court.

1. Criminal Law—Accomplice—Evidence.—An accomplice, in the commission of a crime, is one against whom the evidence is sufficient to sustain a conviction of guilt.

2. Criminal Law—Accomplice—Evidence.—If the testimony of the accomplice is eliminated and there yet remains evidence against the accused, which connects him with the commission of the crime, there is a corroboration of the evidence of the accomplice, as required by section 241 Criminal Code.

3. Criminal Law—New Trial.—A new trial will not be granted, as a general rule, on account of newly discovered evidence which tends only to impeach or discredit an opposing witness.

W. E. BEGLEY for appellant.

C. H. MORRIS, Attorney General, and BEVERLY M. VINCENT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Harry Hale and one Harvey Rowe, were jointly indicted for the crime of feloniously breaking into a storehouse, with the intent to steal therefrom. Upon a separate trial of the appellant, he was found guilty by the verdict of the jury, and his punishment fixed at

imprisonment in the state reformatory for one year, and a judgment of the court was rendered accordingly. Being denied a new trial, he has appealed, and assigns as reasons why the judgment against him should be reversed, as follows:

(1) The evidence is insufficient to sustain the verdict.

(2) The conviction was had upon the testimony of an accomplice, which was not corroborated by other testimony, to the extent required by law to authorize a conviction.

(3) The court erred to the prejudice of his substantial rights in denying him a new trial upon the ground of newly discovered evidence in his behalf. The facts, as developed by the evidence, were substantially, that on a Sunday, Winwright Mallicote, who kept a storehouse, for the sale of merchandise, in the village of Altamont, accompanied by his wife, closed his storehouse, locking the doors, and nailing down the windows, and went for a visit to the dwelling of a neighbor, who resided about three hundred yards distant. It was between ten and eleven o'clock, in the morning, and appellant, who resided near East Bernstadt, had left his home and came to Altamont, and when Mallicote returned to his storehouse, after having been gone from it about one hour, the appellant was sitting upon the railroad right of way, on the side upon which the house fronted. When Mallicote entered the house, he discovered that the cash drawer had been rifled, and a trunk, in which he kept money, had been broken into with an axe, and the money, a ring and watch, which were in the trunk, had been stolen. The thief or thieves had entered the house, by breaking a pane of a window upon the back side of the house. The sum of money, which had been stolen, was between eight hundred and twelve hundred dollars. Mallicote sent for his wife to return to the store, and immediately departed for East Bernstadt, to seek assistance and information, which would lead to the recovery of the money, and the detection of the taker. Very shortly after Mallicote's wife returned to the house, the appellant and his brother-in-law, Wells, came into the house, and the latter inquired what had occurred, when Mrs. Mallicote answered, "you look and you will see." Wells, then said, "call the bloodhounds." Mrs. Mallicote answered, "I don't know how, do you? I can't leave home. Here is the money, go and call them." Hale then says, "don't do that, don't call the bloodhounds, I know who got the money." Again

Hale said: "come here, don't call the bloodhounds, I know who got it." He then says, "who do you think got it?" Mrs. Mallicote answered "Harvey Rowe." He then said, "I will go and get it." Hale went out of the house and Mrs. Mallicote requested Clarence Parker to watch him and to observe where he went, and he testified that he did so. Parker testified, that Hale went in the direction of the Altamont spring, and when near it, turned about and returned to the house, without coming in contact with any other person. He was gone, but a few minutes, and not a sufficient time to have enabled him to have gone to the home of Rowe, a half mile away, as he afterwards stated, and testified on the trial. When he returned, he said, "Mrs. Mallicote, have you the blood hounds?" She answered, "No, Willie could not get them." Hale then says, "I have $120.00 of your money, and I know where I can get the rest of it." He then departed again. After Mallicote returned from East Bernstadt, Hale and Wells, again came into the house, and Hale said to him, "Come here. If I were you, I would not call in any bloodhounds; they will cost you seventy-five or a hundred dollars to get them. I have $125.00 of your money in my pocket. I got it off of Harvey Rowe. I have got Harvy Rowe treed over in a coal bank. I wouldn't have bloodhounds, I know where every cent of your money is, and I will get it." He then left, as though to go and get it from Rowe. Charles Casteele testified, that about one o'clock of the day, the store was broken into, that Hale and Wells came and called Mallicote and the witness aside, and Hale inquired if the bringing of the bloodhounds could not be stopped, when Casteele answered that they would be stopped upon one condition, and that was that the money be forthwith brought forward and delivered to Mallicote. Hale requested that the bringing of the hounds be stopped, and said that the money could be had, and that he had a portion of it, or knew where a portion of it was; that he had gotten a part of it and could get the remainder of it, and knew where the remainder of it was. He was then told, that the dogs would be stopped, when the money was brought forth, and he said that "we would go and get it." Hale, accompanied by Casteele, went to a place, where a hole was scratched in the ground, near the home of Rowe, and said that was where the money had been buried. The father of Rowe testified, that he received information, that his

son was accused of the crime, and saw Hale and his son in conversation near his home, and he went to them and said to his son, that he had heard, that he was being accused of a "bad thing," when Hale said, "you needn't be uneasy about Harvey. Harvey is not guilty. I will swear to it, Willie Wells will swear it, and Ed. Graham." Harvey Rowe testified to the effect, that two or three weeks before the breaking, Hale said to him that Mallicote had a big lot of money in the house, and that he intended to break in and get it; that he knew where it was kept; that he had seen him pay a drummer a bill and saw where the money was gotten from, and on the day of the breaking but previous thereto, he saw Hale in a clump of bushes below Altamont, and that afterwards, Hale came to his home, and called him out, and told him that he had broken the house, and had the money, and that he would give him a portion of the money, not to tell, that he said that he intended to steal it, and gave him between $120.00 and $150.00 and a watch, and that he buried it in the ground, at the place, where they were, and at the place, where Hale told Casteele, that it was; that Hale said, that he and witness were both being accused of the breaking and theft, and this was the only time, Hale came and talked to him on that day.

On the day of the theft, when Hale had accused Rowe of the crime, Rowe then told of the transaction, as above stated, but, when he was accompanied by Casteele and went to find the money and watch, which he said, Hale had given to him, they failed to find it at any place, and Rowe then claimed, that he had thrown the money over into a garden, and pretended to look for it under his father's house, and in the bushes, and said, that some one must have gotten it.

Hale denied that he had ever told Rowe, that he intended to steal the money, or that he had done so, or that he knew anything of the theft until it was accomplished; or that he went in the direction of the Altamont spring, when he started to get the money. He claimed, that at the request of Mrs. Mallicote, he went to see Rowe, but Rowe denied, that he had broken into the house, and that he went a second time to see him, and by representing to Rowe, that he and Wells and others would have to be witnesses against him, and that the evidence of his guilt was overwhelming, he induced Rowe to confess his

guilt, and that Rowe therefore gave him $100.00 of the money, not to tell it, and $20.00 to employ a lawyer for him, and that was the $120.00 which he had and turned over to the sheriff. He further, said, that Rowe had the money buried, at the point, he pointed out to Casteele.and the sheriff. He, also, denied, that he gave any money or watch to Rowe. He was corroborated in many of his statements by other witnesses, and the evidence tends very strongly to prove, that Rowe was the party who actually entered the house and stole the money. The jury was instructed as to the guilt of the appellant, if he was the principal perpetrator of the crime charged, and, also, if Harvey Rowe actually committed the breaking, and the appellant was present and aided and abetted Rowe, in so doing, and the jury evidently arrived at the conclusion, that the appellant and Rowe jointly committed the crime, and the apparent efforts of appellant to secure the return of the money, was to conceal his connection with it, and to escape the consequences of it, and for that purpose, he was willing to return a portion of the money, and to fix the entire guilt of the crime upon his accomplice. The mere statement of the substance of the evidence makes it apparent, that, the verdict of the jury is not flagrantly against the weight of the evidence, if the evidence is believed. In a criminal trial, it is necessarily the province of the jury, to determine from the evidence what the facts are, and it is the judge of the credibility of the witnesses, and its verdict, where it was properly instructed, as in this case, will not be set aside upon appeal, unless the verdict is so flagrantly against the evidence, as to appear, at first blush, as having been induced by passion and prejudice. Ratliffe v. Com., 182 Ky. 259; Martin v. Com., 178 Ky. 443.

It is insisted, however, that Rowe, being an accomplice in the commission of the crime, and having testified as a witness, that, the conviction rested upon his testimony, and that his testimony was not sufficiently corroborated, as required by section 241, Criminal Code. From the evidence, there can be but little doubt, that Rowe was an accomplice. Where a judgment of conviction, adjudging one to be a principal, aider or abettor, or accessory before the fact, in the commission of a crime, can be sustained upon the evidence, such person will be considered an accomplice, when called as a witness to testify against another, who is charged with participation in the crime.

Levering v. Com., 132 Ky. 678; Elmendorf v. Com., 171 Ky. 410. The corroboration of the testimony of an accomplice necessary to sustain a conviction, under section 241, Criminal Code, is had, where, if the testimony of the accomplice is eliminated from the trial, and the testimony, of the other witnesses, will connect the accused with the commission of the crime without the aid of the testimony of the accomplice. Com. v. McGarvey, 158 Ky. 570. Applying such rule to the present case, it is clear, that the testimony of Rowe is corroborated by other evidence tending to connect the appellant with the commission of the crime. The court correctly instructed the jury, touching the weight to be attached to the testimony of an accomplice, and its duty, in the premises, as provided by section 242, Criminal Code.

The newly discovered evidence, upon which appellant insists that he is entitled to have a new trial, consists of the contents of affidavits, made chiefly by fellow occupants of the jail with appellant, who propose if a new trial is granted, to testify to statements made by Rowe after the conclusion of appellant's trial, which are contradictory of statements made by him upon the trial. The statements, which these proposed new witnesses allege that they will make, could, upon another trial, be made competent evidence, only for the purpose of impeaching or discrediting the evidence of Rowe, and after the proper foundation for their introduction had been laid. The same rule prevails with regard to granting a new trial on account of newly discovered evidence, in a criminal prosecution, as in a civil action, and a new trial will not be granted on account of newly discovered evidence, which is competent only for the purpose of impeaching an opposing witness, unless the circumstances of the case are such, that the new evidence will be of such character and preponderating influence as to be reasonably calculated to have a decisive influence upon the result of the trial. Gee v. Com., 178 Ky. 666; Ray v. Com., 184 Ky. 800; Lyons v. Com., 176 Ky. 657; Crouch v. Com., 172 Ky. 463; Mercer v. Mercer, 87 Ky. 21; Hays v. Com., 149 Ky. 184; Ellis v. Com., 146 Ky. 715. In the trial of this action, the attorney for the Commonwealth when a witness was called to impeach the testimony of Rowe, admitted upon the record, that his character was bad for morals, honesty, or any other trait, and mere contradictions of

the testimony of such a witness by inmates of the county jail, could not be deemed to be of such convincing character, as to decisively influence the result of the trial.

The judgment therefore must be affirmed.