MAINE WATER COMPANY *vs.* CITY OF WATERVILLE.

Kennebec.          Opinion February 9, 1900.

*Municipal Corporations. Water Company. Contracts. Taxation. Exemptions. Priv. & Spec. Acts, c. 141, 1881; c. 59, 1887.*

A city or town may make a valid contract with a water company wherein, in consideration of the agreement of the company to furnish a supply of water for municipal purposes, it agrees to pay therefor, in addition to a specified sum of money, another sum each year equal to the amount of tax that may be assessed for that year upon the company's property, provided that the consideration for this agreement upon the part of the municipality is reasonably adequate and that the contract in other respects is reasonable and fair.

Although such a contract may be made for the purpose of exempting from taxation the property of the contracting corporation, and the form adopted may be merely intended to cover with the semblance of legality an illegal attempt to exempt property from taxation without a fair return therefor, this is not necessarily so; and the validity of the contract will depend upon the circumstances of each case.

The term "exemption" implies a release from some burden, duty or obligation. It can not be properly said that a corporation, which for a valuable and ade-

quate consideration obtains the agreement of the municipality in which it is located to reimburse it for the amount of taxes that it will be obliged to pay, is thereby exempted or released from the burden of paying its just proportion of taxes.

*Held;* that the contract involved in this case was fair and reasonable when made; that the city thereby received an amply adequate consideration for its agreement, and has since received a fair equivalent for its payments; and that the contract was not intended as the cover of an illegal attempt to exempt the company's property from taxation.

Nor is such a contract, when made in good faith, and when its terms are reasonable and fair, contrary to public policy. In many cases it may be absolutely necessary for a city or town to make a water contract for a term of years, in order to obtain the great benefit of a sufficient water supply for the protection of the property of its inhabitants against fire, to provide for the health of its citizens by a proper sewer system and for other municipal purposes. Such a contract must contain some elements of uncertainty as to compensation because of the uncertainty of the extent of water service that may be required in the future by reason of the growth of a municipality in population and the increase of its needs.

ON REPORT.

This was an action of debt, to recover the sum of $924.00, which the plaintiff claimed was due to it on September 23, 1897, for water service rendered by it to the City of Waterville under its contract of January 21, 1890. Plea, general issue and brief statement:

"And for a brief statement of special matter of defense to be used under the general issue pleaded, the said defendants further say, that the alleged contract of January 21, 1890, referred to and set up in plaintiff's declaration, was not made for and upon the consideration therein expressed, but that the expression of consideration therein was fraudulently inserted for the purpose of concealing the true character of said contract and making it appear to be legal and proper, when in truth and in fact the real agreement and understanding between the parties, who subscribed and executed said pretended contract, was illegal and improper.

"And defendants further say, that the real meaning and intention of the parties to said alleged contract, and the real purpose and object thereof, was to exempt plaintiff's property from taxation in contravention of the principles of the constitution pertaining to such subjects.

"And defendants further say, that it was also the real meaning and intention of the parties to said alleged contract, and one of the real purposes and objects thereof, to illegally limit and control the action of the assessors of said city in the performance of the duties imposed upon them by law.

"And defendants further say, that said pretended written contract is utterly illegal and void for want of power or authority on the part of defendants' agent who pretended to execute the same."

The facts are stated in the opinion.

*H. M. Heath and C. L. Andrews,* for plaintiff.

*H. D. Eaton,* city solicitor, for defendants.

Such contracts are void. *Brewer Brick Co.* v. *Brewer,* 62 Maine 62, and cases cited. *Dill* v. *Wareham,* 7 Met. 477, holding that officers having a statutory duty to perform can not be controlled by vote of the town. And see also *People ex rel. Eckerson* v. *Zundel,* 1 Mun. Corp. Cases, 104, citing *Lorillard* v. *Town of Monroe,* 11 N. Y. 392; *Thorndike* v. *Camden,* 82 Maine, 39.

And it is well to note that no part of the powers and duties of the assessors are prescribed by the city charter, nor are they in any way subject to the control or direction of the city government. But on the contrary, all their powers and duties are prescribed by the general statutes, and are to be exercised wholly independent of the city government.

Such a contract is contrary to public policy, and therefore void for a city to contract to pay annually for many years a sum of money, the gross and annual amounts of which are both uncertain; and more especially so when the return to be received is also uncertain.

Under the express terms of this contract the net cash result to each party is not only uncertain but utterly indeterminate for three reasons: (1) The contract applies not only to the property then owned by the company, but also to "all pipe lines with hydrants and fixtures hereafter laid by said Water Company in said City." (2) The rate of taxation for future years was of necessity unknown to both parties. (3) The service to be ren-

dered by the Water Company extended not only to all sewers and school-houses then existing in the city, but to all future additions thereto. And it was attempted to make this contract binding upon both parties for twenty years.

In *Garrison* v. *Chicago,* 7 Biss. 480, (1877) the court held a contract for a supply of gas for ten years invalid, and also held that the power to make such contract was legislative, and that the council could not, without any reasonable necessity appearing, bind their successors for ten years. Drummond, J., added, "In all cases of contracts to run for years, the authority to make them should be clear. It is better that all parties should understand there is a limit to the powers of municipal bodies in such cases."

In Dillon on Mun. Corporations, 4th Ed. § 97, the learned author says: "Powers are conferred upon municipal corporations for public purposes; and as their legislative powers cannot, as we have just seen, be delegated, so they cannot without legislative authority express or implied, be bargained or bartered away. Such corporations may make authorized contracts, but they have no power, as a party, to make contracts, or pass by-laws, which shall cede away, control or embarass their legislative or governmental powers, or which shall disable them from performing their public duties. The cases cited mark the scope and illustrate the application of this salutary principle in a great variety of circumstances, and, for the protection of the citizen, it is of the first importance that it shall be maintained by the courts in its full extent and vigor." Vide also *Richmond Gaslight Co.* v. *Middletown,* 59 N. Y. p. 228; *Milhau* v. *Sharp,* 27 N. Y. p. 628; *Davis* v. *Mayor of N. Y.* 14 N. Y. 533. In *Gale* v. *Kalamazoo,* 23 Mich. 344, (9 Am. Rep. 80), Judge Cooley says: "Indeed, it is impossible to predicate reasonablesness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise.

"These powers are conferred in order to be exercised again and again, as may be found needful or politic, and those who hold them in trust to-day are vested with no discretion to circumscribe

their limits or diminish their efficiency, but must transmit them unimpaired to their successors. This is one of the fundamental maxims of government, and it is impossible that free government, with restrictions for the protection of individual or municipal rights, could long exist without its recognition." Vide also *Brick Presbyterian Church* v. *Mayor of New York*, 5 Cowen, 538; *Goszler* v. *Georgetown*, 6 Wheat. 597.

The power of taxation is a legislative power of the utmost importance. By the terms of this contract the city has bargained it away for a period of twenty years as respects a large and constantly increasing amount of property.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

WISWELL, J. On May 5, 1887, the Waterville Water Company, the predecessor of the plaintiff corporation, entered into a written contract with the inhabitants of the then town of Waterville, by the terms of which, the Water Company contracted among other things, to construct a safe and suitable reservoir in the town with a capacity of at least two million gallons of water, the bottom of which reservoir should be at least one hundred and seventy-five feet above the level of the street at the postoffice; to force water to such reservoir from either the Messalonskee stream, or the Kennebec river, and keep therein at all times water sufficient to supply the hydrants to be established in the town of Waterville for extinguishing fires and also sufficient to supply the inhabitants of the town with water for domestic and other uses; to convey the water from the reservoir through cast iron pipes of adequate size and strength to be laid by it in certain named streets of the town, and to connect such pipes with fifty hydrants of the most improved pattern to be furnished and placed in position by the company wherever located by the town, and to furnish water for such hydrants.

The Water Company therein further contracted to furnish, free of charge, except for the consideration hereinafter referred to, water for three watering troughs and a limited supply of water for

the seven school-houses in the village, the town-hall, selectmen's office, engine-houses, a fountain, and to supply one street sprinkler. The town upon its part, in consideration of the agreements made by the Water Company, agreed to pay forty dollars per annum for each of the fifty hydrants referred to and thirty dollars per annum for each additional hydrant that the town might need and require to be set. It was further provided that the contract should continue in force for a period of twenty years "from the time said works are completed, and said hydrants are supplied with water sufficient to render a reasonably efficient fire service.

At a meeting of the board of aldermen of the city of Waterville, held April 2, 1889, the town having in the intervening time become a city by act of the Legislature, this communication from the Water Company was presented and read:

"To the City Council of Waterville:

The Waterville Water Company respectfully represents that the valuation put upon its property and plant for the purposes of taxation for the year 1888 was excessive and pray that a reasonable abatement of its tax for that year may be ordered. Said Company also pray that a reasonable fixed valuation may be decided upon by the City Council for a definite term, upon which said Company's tax shall be based."

This communication was signed in the name of the Waterville Water Company, by its Treasurer.

Thereupon, at the same meeting, the following order was presented in the board of aldermen, and, upon the same day, passed in concurrence by both branches of the city council:

"Ordered: That the Mayor be and hereby is authorized and instructed to propose to the Waterville Water Company, that if said company will furnish to the city water for flushing the public sewers whenever necessary, the city will fix a valuation of not exceeding $25,000, upon which to tax said company's property. Said valuation to continue so long as the Water Company shall furnish water for flushing the sewers, not exceeding the remainder of the term of the contract now subsisting between the city and said Water Company, and if said proposition is agreed to by said com-

pany, to contract in writing in behalf of the city with said company in accordance with this order."

On April 12th, 1889, a supplemental contract was entered into between the city and the Water Company, substantially in accordance with the order above quoted, except that the terms of the contract in relation to the supply of water to be furnished for school-houses and public buildings were considerably more liberal for the city than the terms of the original contract. It contained a provision in relation to the furnishing of water for flushing sewers, as stipulated in the order passed by the City Council, and a further agreement to supply water for a proposed new city building.

The language of the contract relative to the obligation of the city was as follows: "The City of Waterville, the party of the second part, for and in consideration of the use of water furnished (free of charge) by the party of the first part as hereinbefore mentioned, hereby contracts and agrees with said party of the first part, through Nathaniel Meader, Mayor of said city, its Agent, hereunto duly appointed and authorized, that the annual valuation of said Company's works and the property now owned by said Company in said Waterville, for the purpose of taxation shall not exceed the sum of twenty-five thousand dollars for and during the continuance of the original contract for a supply of water made between said Company and the town of Waterville, and dated May 5, 1887." This contract was subsequently ratified by a resolution passed in concurrence by both branches of the city council.

At a meeting of the board of aldermen, held November 5, 1889, the following order was presented and laid upon the table:

"Whereas, the Waterville Water Company on the twelfth day of April, A. D. 1899, made a contract with the City of Waterville to furnish certain water service for said City, as expressed therein, and whereas, doubt has been expressed as to the validity of said contract on account of the terms in which the same is expressed, therefore, be it ordered:

"That in consideration that said Waterville Water Company has furnished said water service to the present time and shall furnish

the same for the term expressed in said contract, said city will pay
therefor a sum of money annually which shall be equal to the tax
annually assessed against said company by said city on such a por-
tion of said Company's valuation as shall be in excess of twenty-
five thousand dollars. This agreement shall take effect and
become operative when said company shall express its assent there-
to and shall include the present year, and the mayor is hereby
authorized to make a formal contract with said Water Company in
accordance with the spirit and terms of this order." This order
received a passage by both branches of the city council on Novem-
ber 11, 1889.

Upon January 21, 1890, a new contract was entered into be-
tween the city and the Water Company as authorized by the fore-
going order, wherein the agreements of the Water Company were
substantially identical with those contained in the contract of
April 12, 1889. The contract, upon the part of the city, was as
follows: "The City of Waterville, the party of the second part,
for and in consideration of the use of water furnished by the party
of the first part, as hereinbefore mentioned, hereby contracts and
agrees with said party of the first part, through Nathaniel Meader,
Mayor of said City, its agent, hereunto duly appointed and author-
ized, to pay said Water Company each year a sum of money equal
to all taxes assessed for that year upon the property now owned by
said Company in said city, and all pipe lines with hydrants and
fixtures hereafter laid by said Water Company in said city, in
excess of the tax assessed upon a valuation of twenty-five thousand
dollars ($25,000) for and during the remainder of the term of the
original contract for a supply of water made between said Com-
pany and the town of Waterville, and dated May 5th, 1887." It
was further provided therein, " that this contract is substituted for
the contract entered into by and between said city and said Water
Company April 12, 1889."

The Waterville Water Company was incorporated by an act of
the Legislature approved March 16, 1881. By act of the Legisla-
ture approved February 8, 1887, its charter was amended by the
addition of the following section: "Said towns of Waterville, Wins-

low and Fairfield Village corporation, or either of them, are hereby authorized to contract with said Waterville Water Company for such supply of water as is contemplated by said act of incorporation, and as herein amended, and to pay to such company such compensation therefor as may be agreed upon by said company and said town or towns."

For a number of years succeeding the execution of the contract last referred to, the city yearly paid to the company an amount equal to all taxes assessed upon the company's property in excess of the tax assessed upon a valuation of twenty-five thousand dollars and exclusive of the tax upon new property acquired by the company subsequent to the time of the execution of this contract. But in the year 1897, the tax upon the company's property having been paid by the company, the city refused to pay the company the amount provided by the contract, and this suit was brought to recover the same.

It is urged, upon the part of the defense, that the contract of January 21, 1890, the one upon which this suit is based, was illegal and void because its purpose and effect was to exempt from taxation a considerable portion of the water company's property, or to limit and restrain the assessors of taxes from placing a true valuation upon its property.

If this were true, that is, if the terms of the last contract were merely intended as a cover, and if the real intent and purpose of the contracting parties was to grant an exemption from taxation, in whole or in part, we should have no question of the correctness of the defendant's position.

By the constitution of this state, "all taxes upon real estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof." Although this section applies specially to real estate, yet the very idea of taxation implies an equal apportionment and assessment upon all property, real and personal, according to the just value thereof. *Brewer Brick Company* v. *Inhabitants of Brewer*, 62 Maine, 62. All property which is the subject of taxation under the authority of the State must bear its just and due proportion of the burden thereof.

Nor, perhaps, is there any doubt that the contract of April 12, 1889, was invalid, whatever may have been its purpose or the consideration therefor, because therein the City of Waterville, attempted to limit the official action of the assessors of that city, an entirely independent tribunal created by authority at law, and over which the city council of Waterville had no control whatever.

But the question here is, whether or not a municipality may make a valid contract with a water company, wherein, in consideration of the contract of the company to furnish a supply of water for municipal purposes, it agrees to pay therefor, in addition to a specified sum of money, another sum each year equal to the amount of tax for that year assessed against the company, provided that the consideration for this agreement upon the part of the municipality is reasonably adequate. We think that such a contract, if reasonable and fair, and for a reasonable length of time, may be made.

It was decided by this court, in *City of Portland* v. *Portland Water Company*, 67 Maine, 135, that, in pursuance of legislative authority, the City of Portland might exempt from taxation for a term of years the property of the Water Company, in consideration of an undertaking and agreement by the company to furnish, free of cost to the city, a supply of water for its public and municipal purposes. The court pointed out that the legislative action, followed by the vote of the city council in pursuance of it, partook of the nature of a contract with the defendant corporation, and distinguished the case from that of *Brewer Brick Company* v. *Brewer*, supra, which was much relied upon by the plaintiff.

The great distinction between these two cases, *Brewer Brick Company* v. *Brewer*, and *Portland* v. *Portland Water Company*, is obvious. In the former case the municipality attempted, undoubtedly because it was believed that thereby benefits would ultimately but indirectly accrue to the people of the town, to exempt the defendant from its just share of the burden of taxation, while in the latter case the city only paid for benefits received by the municipality as such by the so-called exemption.

But in the case under consideration the contract neither provides

for nor means exemption from taxation, if the consideration for the agreement upon the part of the city is reasonably adequate. The term "exemption" implies a release from some burden, duty or obligation. "It is a grace, a favor, an immunity; taken out from under the general rule, not to be like others who are not exempt; to receive, and not make a return." *Bartholomew* v. *City of Austin*, 85 Fed. Rep. 359. But it cannot be said that a corporation that, for a valuable and adequate consideration, obtains the agreement of another to reimburse it for the amount of taxes that it is obliged to pay, is thereby exempted or released from the burden of paying its just proportion of taxes.

A lessor provides in his lease that, as a partial payment for the use of the demised premises, the lessee shall reimburse him for the amount that he shall be obliged to pay as a tax upon such premises. Is the lessor or his property exempted or released from any burden of taxation? Certainly not; the payment of a tax by the lessee is only the payment of a partial consideration for the use of the premises. No more, we think, can it be said that this contract under consideration has the effect of exempting the property of the plaintiff corporation from taxation provided that there was an adequate consideration for the contract.

If, as was decided in *Portland* v. *Portland Water Company*, supra, a city may make full compensation for a water supply needed and received by it, by offseting the tax against the service rendered, why may not a valid contract be made to pay in part for such service by the payment of a sum equal to the tax assessed upon the company's property, in addition to the payment of a definite sum?—when by reason of the extent of the water service rendered a sum equal to the tax assessed would not be a fair equivalent therefor.

We can see no distinction in principle. True, in *Portland* v. *Portland Water Company*, the Legislature specifically authorized such a contract; but no objection is made to this contract because of a lack of authority given by the Legislature as, we have already seen, the town of Waterville was authorized by an amendment to the charter of the original company to contract with that company for a supply of water.

Our conclusion that such a contract is valid, when made for an adequate consideration, is abundantly sustained by numerous decided cases.

In *Cartersville Gas & Water Company* v. *Cartersville*, 89 Ga. 683, the city agreed that it would exempt or cause to be exempted from municipal taxation all the property of the Gas & Water Company for a term of years, and that: "If the city should at any time during the five years find itself obliged by a decree of any court or by operation of law to assess and collect a tax against the property mentioned, then the city agreed that, in consideration of the reduced prices at which the gaslight was to be furnished it and its citizens, it would pay or return to the Illuminating Gas Company all sums of money which it or they might have been obliged to pay, and which might have been levied or assessed against the property by the city in violation of the spirit of this contract." In an action brought by the company to recover from the city the amount which it had been obliged to pay as taxes assessed upon its property, it was held by the court as follows: "While a city can not exempt a gas company from municipal taxation, it can contract to pay for gas a stipulated sum per lamp, and in addition thereto, a sum for all the lamps supplied equivalent to the amount of taxes imposed upon the company; provided this additional sum is a fair and just allowance to compensate for the actual value of the light service, and the stipulation is bona fide and not in the nature of an evasion of the law prohibiting an exemption from taxes." The court further held: "The present action is not brought to recover money voluntarily paid as taxes, but for a balance due under the contract for lighting the city, this balance being measured in part by the amount of taxes assessed and collected by the municipal government from the gas company."

In *Grant* v. *Davenport*, 36 Ia. 396, an ordinance of the city of Davenport provided that the water company should, during the life of the grant, furnish water free of charge to all public schools and to all city buildings and for certain fountains and watering troughs: "And in consideration of the foregoing provisions the said company, during the term of twenty-five years shall be exempt from

all municipal taxation on the franchise hereby granted, and all property owned by said company and actually required for the economical management of the works aforesaid."

The court held that this ordinance was a valid one, saying in its opinion: "But it seems to us that when the whole ordinance is construed together, it does not amount to exemption from taxation. It in effect applies the taxes as they would otherwise become due in part payment of, or in part consideration for, the water rent. The city pays the amount specified and the taxes upon the franchise and the property required for the management of the works, as water rent. It might have required the payment of the taxes, and then returned the amount as part pay for water rent. The manner of doing it can not defeat the power to do it."

In *Bartholomew* v. *City of Austin,* supra, a case decided by the Circuit Court of Appeals for the Fifth Circuit, the contract between the water company and the city provided that the city should have the right to use water, free of charge, from the hydrants for the purpose of flushing sewers, for the fire department buildings, city hall and all public schools and for watering places and fountains; "in consideration of all of which the property of the City Water Company shall be and the same is hereby exempted from municipal taxation during the full term for which the contract is executed." The courts sustained the contract and held that the meaning of the provision above referred to was not to grant an exemption from taxation. *Grant* v. *City of Davenport,* supra, and *Portland* v. *Portland Water Company,* supra, were both cited by the court in its opinion with approval.

In *Utica Water Works Company* v. *Utica,* 31 Hun, 431, the contract between the Water Company and the city provided that for the water service furnished by the company for municipal services, the company was to receive a definite sum each year and in addition thereto a sum equal to one-half of its taxes paid in excess of one thousand dollars. The court sustained the contract. In the opinion of the court it is said: "The contract furnished a mode of computation by which the sum to be paid annually by the city could be ascertained. The effect of the contract is not to relieve

the company from the payment of taxes in whole or in part at the expense of the tax-payer, but it is to adopt the amount of taxes paid by the company as a partial measure of compensation for the water supplied by it. . . . . It is not a remission of taxes, but simply a resort to the amount of taxes as a measure of compensation."

In *New Orleans* v. *Water Works Company*, 36 La. 432, the act of the legislature incorporating the Water Works Company provided that the city should be allowed water free of charge for fires and other public purposes, "and in consideration thereof the franchises and property of said New Orleans Water Company used in accordance with the act shall be exempted from taxation, state municipal and parochial." A contract was made between the company and the city in accordance with the legislative enactment, but the city subsequently assessed and brought suit against the company for the taxes. The court held that the city was entitled to judgment, since by express provision of the constitution property could not be exempted from taxation unless it was "actually used for church, school or charitable purposes," but that the Water Company could compel the city to pay for water used a sum equal to the amount of the taxes thus recovered, as the latter amount was made by the act of the legislature and by the parties the exact consideration for the free supply of water.

In *Ludington Water Supply Company* v. *City of Ludington*, reported in 78 N. W. Reporter, 558, a case decided by the Supreme Court of Michigan, and announced March 6, 1899, the question considered was identical in principle with the one here presented. The court decided that a contract whereby a city, as part consideration for a water supply, agrees to pay all taxes levied against the property of the Water Company in excess of a certain amount, during the continuance of the contract, is not invalid as an attempt to exempt a company's property from taxation, in excess of the amount named. The court says in its opinion: "It is contended that the provisions relating to taxes are invalid, for the reason that the city has no power, under its charter, to exempt property from taxation, and that this contract is an attempt to exempt the

property of the plaintiff in excess of a certain amount from its share of the public burden. The contract does not purport to provide that the property of the plaintiff shall not be assessed. Its terms indicate that it was intended by both parties that it should be assessed, and that the plaintiff would pay the taxes on the property up to a certain amount, and the defendant all in excess, as a part of the consideration for the supply of water. The city no more exempts the property of the plaintiff from taxation by such an agreement than does the mortgagor who agrees to pay the taxes levied against the mortgaged property, exempt the mortgaged property from taxation."

It is true, that the courts of some states, where the question has arisen, have come to a different conclusion, and have regarded a contract, similar to this in substance, as an attempt to exempt the property of the corporation contracting with the city from taxation. That such may be true in any given case, and that such a contract may be merely intended to cover with the semblance of legality an illegal attempt to exempt property from taxation without a fair return therefor, we do not question.

But what we hold is, that a municipality may, for a reasonably adequate consideration, in the way of service rendered to it for municipal purposes, agree to make compensation therefor, for a term of years not unreasonably long, either in whole or in part, by reimbursing the company, in whole or in part, the amount that the company performing the service may be obliged to pay as taxes assessed upon its property. We think that this conclusion is sustained both by reason and the weight of authority.

This view leads us to an examination of the question of fact as to the adequacy of the consideration for the city's agreement in this case; but about this there is apparently no controversy. It is sufficient to say, upon this branch of the case, that the undisputed testimony of witnesses produced by the plaintiff shows that a fair compensation, according to the prevailing rates, for the water supplied by the company during the year 1897, under the contract of January 21, 1890, in addition to that which was provided for in the original contract of May 5, 1887, would be far in excess of the

amount that the company can recover in this action under the terms of the latter contract.   According to this testimony, this compensation would amount to over three thousand dollars, while the amount that can be recovered in this action is less than one thousand dollars.

As to the years preceding 1897, it is admitted that the value of the water service rendered by the company was equal each year to the amount that the city under the last contract reimbursed the company for taxes paid.   In view of this evidence and admission, and the further fact that the counsel for the city raises no question of adequacy of consideration, either by evidence or argument, we may safely assume that during the remaining years of the contract the city will receive at least an equal equivalent for the amount that it will be obliged to pay.

We are, therefore, forced to the conclusion, from the value of the water service that has been actually furnished, than which no better evidence could be produced, that the contract when made was fair and reasonable; that the city thereby received an amply adequate consideration for its agreement, and has since received a fair equivalent for its payments; and that the contract was not intended as the cover of an illegal attempt to exempt the company's property from taxation.

It is further urged that this contract was void because "it is contrary to public policy for a city to contract to pay annually for many years a sum of money the gross and annual amounts of which are both uncertain, and more especially so when the return to be received is also uncertain."

We do not think that the contract involved in this case is contrary to public policy.   It is not for an unreasonably long period of time.   In many cases it is absolutely necessary for a city or town to make a water contract for a term of years, in order to obtain the great benefits of a sufficient water supply for the protection of the property of its inhabitants against fire, to provide for the health of its citizens by a proper sewer system and for other municipal purposes.   Without a contract extending over a period of years, it would, we believe, frequently be the case that

no individuals or corporation could be found who would go to the expense of constructing a suitable and sufficient water plant that would answer the requirements for public purposes as well as for domestic uses.

Such a contract must contain some elements of uncertainty as to compensation, because of the uncertainty of the extent of water service that may be required in the future by reason of the growth of the municipality in population and the increase of its needs. There is no very great uncertainty under this contract as to the amount that will have to be paid each year by the city according to its terms.  The provision of the contract relative to the repayment of a portion of this company's taxes only applied to "the property now owned by said company in said city, and all pipe lines with hydrants and fixtures hereafter laid by said water company in said city."  It does not affect the considerable amount of property that has been acquired by the company since the execution of the contract; and while the pipe lines and hydrants of the company may have increased and very likely will increase in length and number, it is reasonable to believe that there will be a corresponding increase of service rendered to the city.  There is undoubtedly some uncertainty in the contract both as to the extent of service that may be required and rendered and the amount of compensation that will have to be paid therefor, but this uncertainty is inevitable in such a contract and is certainly not of such a character as to make the contract contrary to public policy.  As was said in several of the cited cases, the amount of taxes is only adopted as a measure by which to determine the amount of compensation.

It is unnecessary in this case to inquire whether a city council in making such a contract as this is exercising its governmental powers or its business powers, or whether a city council may, without legislative authority, enter into a contract with a water company for a term of years, because in this case, as we have already seen, legislative authority was given for the then town of Waterville to make a contract with the water company for a supply of water.  Two contracts were made, one, providing for the pay-

ment of a specified sum for each hydrant, the other for the payment of a sum to be measured each year by the amount of taxes for such year in excess of a certain amount. Both contracts were fair and reasonable and entered into without fraud.

There is no controversy as to the amount to be recovered in this action if the action is maintainable.. That amount is $924.00 and interest thereon from September 23, 1897, upon which day it is admitted demand was made.

*Judgment for plaintiff for $924.00*
*and interest as above.*

----

PETERS, C. J. I have concurred in the opinion in this case, but not without some hesitation.

I think the principle is so likely to be abused in practice that it would be wise in the legislature to interfere to prevent such contracts in the future. To my mind there is much in the argument, that such contracts are not in accordance with good public policy. As many of our cities and towns have already incurred an indebtedness up to the constitutional limit, they are tempted to purchase the privileges of light and water at extravagant rates in this way. I appreciate a difference between a lessee paying a part of his agreed rent by assuming taxes assessed on the rented property by a third party, and taxes assessed by the lessee himself or by agents and officers in his behalf. Here the taxes to be paid are not merely such as pertain to the property leased, but are the taxes assessed on all the property of the lessors.