227 P.2d 1011

## CITY OF PHŒNIX et al. v. LANDRUM & MILLS REALTY CO.

### No. 5462.

Supreme Court of Arizona.

Feb. 26, 1951.

Francis J. Ryley, George Read Carlock and Joseph P. Ralston, all of Phoenix, for appellant William Larson.

Jack Choisser, City Atty., Laurence H. Whitlow and Jack D. Hays, Asst. City Attys., all of Phoenix, for appellants, City of Phoenix et al.

Jennings, Strouss, Salmon & Trask, Riney B. Salmon and Clarence J. Duncan, all of Phoenix, for appellee.

DE CONCINI, Justice.

This case arose from the protest of defendant, William Larson, a taxpayer of the City of Phoenix, against the action of the city council in leasing certain real property owned by the city to plaintiff Landrum and Mills Realty Company, a corporation. The realty company, as plaintiff and hereinafter referred to as appellee, brought an action under the Uniform Declaratory Judgment Act, sections 27–701 to 27–706, A.C.A.1939, and secured judgment of the lower court upholding the validity of the lease. The facts are not in dispute and are set forth in an agreed statement of the case. They are substantially as follows: On September 13, 1949 and for many years theretofore the City of Phoenix owned and now owns certain real property involved in this action which is located inside the city and is described as follows:

The East half of Block Twenty-three (23), Original Townsite of Phoenix, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book 2 of Maps, page 51 thereof.

For some time the council of the City of Phoenix, had desired to lease said property not only for revenue purposes but also to provide parking facilities for automobiles in the downtown area. The parking problem had become acute and had been the subject of many discussions and a matter of great concern to the council.

To accomplish these purposes the city council duly passed the necessary ordinances and resolutions and pursuant thereto entered into a lease with the appellee realty company, it being the highest and

best bidder, to rent the premises for a period of 50 years at a rental of $2500 per month conditioned that the appellee build a parking garage to accommodate 400 cars at one time. The appellee met all the requirements by posting a sufficient bond and executed a lease satisfactory to both parties.

Thereafter, defendant William Larson, as an elector and taxpayer of the city asserted that said lease was void, invalid or voidable on the part of the city. On July 18, 1950, he caused to be served on the appellee realty company and the defendant city a written notice of his objections to said lease and demanded that it be rescinded and cancelled and declared null and void. As a result of this written notice by defendant Larson, the city considered the nullification and rescission of said lease.

Because of these threats by defendant Larson and the position of the defendant city, it became impossible for appellee to proceed with any reasonable degree of safety to perform the acts and expend the moneys required by the lease. To resolve the uncertainties so created and to establish the validity of the lease, an action was brought by the appellee in the superior court of Maricopa county. The court, sitting without a jury, found in favor of the appellee and decreed the lease to be valid.

From said decree the defendants appeal and assign six errors which may be summarized as follows:

1. The city of Phoenix was without power to lease the real property involved because it had been dedicated as a plaza or park and such dedication had never been vacated.

2. The Phoenix City Council had no power to make the lease because by Chapter XXII of the Phoenix city charter, the power to lease the land here involved was vested in the parks, playgrounds and recreational board.

3. Ordinance No. 5295 of the City of Phoenix, pursuant to which the lease was made, and which purported to be an emergency measure, is not a proper measure because no emergency existed.

4. The declaration of the existence of an emergency does not "state in a separate section the reasons why it is necessary that it should become immediately operative" as required by Chapter V, section 14, of the Phoenix city charter.

5. The lease is so improvident as to render its authorization by the Phoenix city council an abuse of the council's discretion, and therefore void.

6. A city is without legal authority to allow the deduction from lease rentals of amounts equal to taxes paid by the lessee.

Before treating the above assignments, reference should be made to Woodward v. Fox West Coast Theaters, 1930, 36 Ariz. 251, 284 P. 350. That case held that a somewhat similar lease on the west half of Block 23 was valid. The history of title

to the property is identical with the property in this case.

The first two assignments will stand or fall on the determination of the question of dedication.

Further facts which the parties agree upon are that the city acquired the fee to this property in 1881 from the then probate judge with no restrictions as to its use. In 1885 a map or plat was filed in the office of the county recorder by persons unknown with the property in question marked on the map as a plaza.

Appellants contend under the rule laid down in Allied American Investment Co. v. Pettit, 1947, 65 Ariz. 283, 179 P.2d 437, that this property has therefore been dedicated as a plaza or a park. The Allied American Investment case recognized the doctrine of dedication by plat but it rests upon the statutes in effect at the time of that recordation. Those statutes are presently codified as sections 17–1818 and 16–231, A.C.A. 1939. In this case the recordation took place in 1885 where as the statutes relied upon in the Allied American Investment case became effective in September 1901.

■ The case of Evans v. Blankenship, 1895, 4 Ariz. 307, 39 P. 812, which also recognizes the general doctrine of dedication by plat does not aid appellants here. Dedication is the intentional appropriation of land by the owner to some proper public use. The intention of the owner to set aside lands or property for the use of the public is the foundation and life of every dedication. Allied American Investment Co. v. Pettit, supra.

■ The appellee contends and it is not controverted that the making and recordation of the map and plat in 1885 was done by persons unknown. In 16 Am.Jur. Dedication, § 22, p. 366, it is stated: "Where the plat is recorded without the owner's signature or knowledge (or, we might add, authority), it is ineffective, so that if later the owner files another plat leaving a blank space where the dedicatory words were written on the former plat; the recorder is not justified in writing in such words on the new plat to conform to the old one."

The burden of proof to establish a dedication is on the party asserting it and nowhere is it shown that the making and the recordation of the plat in this instance was done by the city or its authority. Dedication is not presumed nor does a presumption of an intent to dedicate arise unless it is clearly shown by the owner's acts and declarations. On the facts presented by appellants, we cannot say that a dedication was made.

■ Appellants' third and fourth assignments of error deal with the emergency aspect of the ordinance. It is claimed that there was no emergency in fact despite the declaration in the ordinance of an emergency; further, the measure did not comply with the charter requirement that the existence and reasons of the emergency

be stated separately. In making these assignments, cognizance was taken of the ruling of this court in the case of Orme v. Salt River Valley Water Users' Association, 25 Ariz. 324, 217 P. 935 in which we held the determination by the legislature that an emergency exists is an exercise of legislative discretion not reviewable by the judiciary. The assignments in this case were made, however, because this court has not previously extended the operation of this principle to the legislative bodies of cities. Since the provisions of the Arizona constitution and of the city charter of Phoenix respecting the passage of statutes and ordinances with an emergency clause are substantially similar, there seems to be no valid reason why the principle of the Orme case should not be applied to the legislative bodies of cities and we now so hold.

The case of Joplin v. Ten Brook, 124 Or. 36, 263 P. 893, cited by appellants in support of their contention was a situation in which the provisions governing the enactment of city ordinances were more restrictive than those governing the enactment of statutes by the legislature and it was on that basis that the court there held the ordinance bad for failing to state the reasons of the emergency in a separate section. There is no basis for such a distinction here because the Phoenix city charter provision and Art. 4, pt. 1, sec. 1, sub. (3) of the Arizona constitution are substantially the same in their requirements.

The city council having determined an emergency to exist it is without our power here to review that decision.

Appellants' fifth assignment of error is that the lease is so improvident that its authorization constituted an abuse of discretion on the part of the city council. In support of their contention appellants cite 38 Am.Jur. Municipal Corporations, § 499, p. 175, relying upon the limitation upon the general rule contained therein to sustain their contention. That section is as follows:

"It is a general rule that officers of a municipal corporation, in the letting of municipal contracts, perform not merely ministerial duties but duties of a judicial and discretionary nature, and that courts, in the absence of fraud or a palpable abuse of discretion, have no power to control their action. It has been said that if a contract is within the power of a municipal corporation, and has been duly entered into, the courts can consider only whether the constitution permits the contract in question; questions of whether the contract is wise or whether its terms are advantageous for the corporation and the public are solely for the municipal officers. Generally, however, *a municipal contract will be declared void if there has been an abuse of discretion on the part of the municipal authorities executing it,* or it is tainted with fraud, or is inequitable or unreasonable." (italics ours)

Appellants seize upon the italicized clause saying that the contract will be declared void if there has been an abuse of discretion and point out several possible ways in which the lease provisions *might* prove detrimental to the welfare of the city and further contend that if each objection in itself might not be good, yet taken together they sustain the contention of an abuse of discretion.

In considering these objections it must be kept in mind that one attacking the validity of a contract made by a municipality has the burden of showing that such a contract was so improvident that it amounts to a palpable abuse of discretion. It is not enough to show that the contract was disadvantageous to the city or that it might possibly prove to be such. We hold that the showing must be that the contract was either tainted with fraud or so inequitable and unreasonable that it amounts to an abuse of discretion. The finding of the lower court constitutes a finding in favor of the validity of the lease and we cannot from a study of the entire lease and the objections presented by appellants say as a matter of law that it is so inequitable or unreasonable as to amount to an abuse of discretion.

The last assignment of error is that the lease provision allowing the lessee to deduct an amount from the annual rental equal to taxes paid by the lessee, if such should ever be levied, is an invalid attempt to exempt the lessee from taxation. The contention is that this is doing indirectly what cannot be done directly, that is, the exemption of a particular leasehold from any future taxation and the conferring of a special privilege upon the lessee.

While a municipal corporation has no implied or inherent power or authority to exempt any property or any particular class of property from taxation yet the provision in this contract for a cross deduction or credit measured in the amount equal to the tax imposed is not invalid. When a contract of this type is made for the purpose of exempting from taxation and is adopted merely to cover with a semblance of legality an illegal attempt to exempt from taxation such a contract is void; however, it is not void where no illegal action is contemplated and there is a bona fide consideration and benefit to the city. When a contract is fair and reasonable when made and the contract is not intended as the cover for an illegal attempt at exemption from taxation it is not one contrary to public policy and provisions similar to this have been upheld. Maine Water Co. v. City of Waterville, 1900, 93 Me. 586. 45 A. 830, 49 L.R.A. 294; Cartersville Improvement, Gas & Water Co. v. Mayor, etc., of Cartersville, 1892, 89 Ga. 683, 16 S.E. 25; City of Winchester v. Winchester Waterworks Co., 1912, 149 Ky. 177, 148 S.W. 1.

Judgment affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.