Joanne STONE;  James Craig, Jovita
Fine, Joseph Wenzel, Plaintiffs–
Appellants,

and

Charlene Craig, Plaintiff,

v.

CITY OF PRESCOTT, a municipality
entity;  Hassayampa Lake Holdings,
L.L.C., Defendants–Appellees,

and

Malcolm Barrett;  Lindsay Bell;  Paul
Daly;  Louis Franyi;  Nancy Holaday;
Philip King;  Mary Ann Suttles;  Kar-
en  Thompson;  Daiton  Rutkowski;
Harold  Wise;  John  Moffitt, Defen-
dants.

No. 97–17121.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1999.

Filed April 2, 1999.

William B. Fortner, Prescott, Arizona, for the plaintiffs-appellants.

Ralph M. Hess, Prescott Legal Department, Prescott, Arizona, for the defendant-appellee City of Prescott.

Before: Harlington Wood, Jr.,[1] David R. Thompson, and Sidney R. Thomas, Circuit Judges.

THOMAS, Circuit Judge:

Plaintiffs claim that the City of Prescott and its elected officials violated their civil rights by depriving them of the opportunity to petition for a city-wide referendum challenging certain real property transfers.

The district court granted summary judgment in favor of the City. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

In October 1995, the city council of Prescott, Arizona ("City") passed Ordinance # 3423 which provided for the sale of City-owned Hassayampa Lake to Hassayampa Lake Holdings, L.L.C. The ordinance included a declaration of emergency stating that:

> [T]he immediate operation of the provisions of this Ordinance is necessary for the immediate preservation of the public peace, health or safety, and that an EMERGENCY is hereby declared to exist; and THIS ORDINANCE SHALL BE IN FULL FORCE AND EFFECT FROM AND AFTER ITS PASSAGE, ADOPTION AND APPROVAL BY MAYOR AND COUNCIL OF THE CITY OF PRESCOTT.

In December 1995, the City passed Ordinance # 3460, which included a similar declaration of emergency, authorizing the acceptance of a grant of mining rights from individuals with potential claims on title to the Hassayampa Lake property. The plaintiffs opposed the land transactions and sought to undo the work of the city council by organizing a referendum of voters to rescind the transactions.

Under the Arizona Constitution the people reserved the power of the referendum. *See* Ariz. Const. art. IV, Part 1, § 1. The Arizona Constitution provides an exception to the referendum power for "laws immediately necessary for the preservation of the public peace, health, or safety, or for the support and maintenance of the departments of the State Government and State institutions...." *Id.* § 1(3). It further provides that "no such emergency measure shall be considered passed by the Legislature unless it shall state in a sepa-

1. The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

rate section why it is necessary that it shall become immediately operative...." *Id.* The Arizona Constitution also reserves the power of the referendum "to the qualified electors of every incorporated city, town, and county as to all ... matters on which ... [they] ... shall be empowered by general laws to legislate." *Id.* § 1(8).

Relying on this provision, registered voter Robert Hay requested the City Clerk of Prescott to issue a referendum petition so Ordinance # 3640 could be referred to city voters. The City Clerk refused to issue a petition because the Ordinance was passed under emergency declaration and therefore not subject to referendum under the Arizona Constitution.

Plaintiff citizens and registered voters of Prescott reacted by filing suit in Yavapai County Superior Court, contending that the City had violated their rights to a referendum under the Arizona Constitution. The state court ruled that the passage of the ordinance with the emergency clause was a non-reviewable exercise of legislative discretion even if there was no actual emergency. Both the Arizona Court of Appeals and the Arizona Supreme Court declined further review. Plaintiffs then filed this action in federal court pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that the City, its officials, and the developer who purchased Hassayampa Lake had violated, and conspired to violate, their constitutional right to a referendum. They sought injunctive and declaratory relief to restrain the defendants "from using a nonfactual declaration of emergency" and rescind the Hassayampa Lake property transactions. The district court granted summary judgment in favor of the city, and this appeal followed.

## II

We review a grant of summary judgment de novo, *see Margolis v. Ryan,* 140

2. Plaintiffs mention but do not press their § 1985 claim on this appeal. However, our affirmance of summary judgment on plaintiffs' § 1983 claim also disposes of their § 1985 claim. *See Giannini v. Real,* 911 F.2d

F.3d 850, 852 (9th Cir.1998), and hold that the district court correctly granted summary judgment on plaintiffs' claims under 42 U.S.C. § 1983 and § 1985.[2]

To state a claim against the City officials under section 1983, plaintiffs must allege that the officials acted under color of state law to deprive them of a right secured by the federal Constitution or by federal law. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Here, plaintiffs failed to establish that they have been deprived of any federal right. Thus, summary judgment was appropriate.

## A

■ Plaintiffs first argue that their right to a referendum is established by the Tenth Amendment, which provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." U.S. Const., amend X. However, plaintiffs misapprehend the scope and purpose of the Tenth Amendment.

■ The Tenth Amendment confirms "that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States,* 505 U.S. 144, 157, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). It encompasses "any implied constitutional limitation on Congress' authority to regulate state activities, whether grounded in the Tenth Amendment itself or in principles of federalism derived generally from the Constitution." *South Carolina v. Baker,* 485 U.S. 505, 511 n. 4, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988). The Tenth Amendment stands as a limitation on federal power because it "prohibits the exercise of powers 'not delegated to the United States.'" *Printz v. United States,*

354, 359 (9th Cir.1990) (stating that "deprivation of federal constitutional rights is a necessary element" of an alleged conspiracy under § 1985).

521 U.S. 98, 117 S.Ct. 2365, 2379, 138 L.Ed.2d 914 (1997).

■■ Thus, it is the power of the federal government which is constrained by the Tenth Amendment, not the power of the States. Plaintiffs cannot found a section 1983 claim on the Tenth Amendment because it is neither a source of federal authority nor a fount of individual constitutional rights.

Plaintiffs insist that the Supreme Court recognized a right to a referendum under the Tenth Amendment in *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). They are mistaken. In *Eastlake*, the Court concluded that zoning by referendum is not per se an arbitrary delegation of legislative power, because the referendum power is one reserved to the people. *Id.* at 672, 96 S.Ct. 2358. The Court recognized that "[a]s a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause ... when applied to a rezoning ordinance." *Id.* at 679, 96 S.Ct. 2358. The Court did not suggest that the referendum process is a fundamental right guaranteed by the Tenth Amendment. Indeed, there is simply no authority for the proposition that appellants have a right to a city referendum arising under the Tenth Amendment. Therefore, plaintiffs' argument that the Tenth Amendment affords them a federal referendum right is without merit.

### B

■ Plaintiffs also argue that preclusion of the referendum process by emergency ordinance burdens their First Amendment right to petition the government. True, states may not place overly restrictive conditions on citizens attempting to exercise initiative or referendum rights. *See Buckley v. American Const. Law Found., Inc.*, — U.S. ——, 119 S.Ct. 636, 649, 142 L.Ed.2d 599 (1999) (holding that Colorado regulations requiring petition circulators to be registered voters and to wear name badges are "restrictions that unjustifiably inhibit the circulation of ballot-initiative petitions"); *Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (holding that a Colorado law making it a felony to pay petition circulators in the referendum process imposed an undue burden on political expression).

■ However, plaintiffs' claims do not fall within the orbit of *Meyer* and *Buckley*. Those cases teach that where the people reserve the initiative or referendum power, the exercise of that power is protected by the First Amendment applied to the States through the Fourteenth Amendment. *See, e.g., Meyer*, 486 U.S. at 420, 108 S.Ct. 1886. Thus, a State may not impermissibly burden the exercise of the right to petition the government by initiative or referendum. That holds true even if the burden is imposed by the State Constitution itself. *See Buckley*, 119 S. Ct at 641–42 (requirement that petition circulators be registered voters does not escape scrutiny because it had been adopted as a constitutional amendment).

In this case, however, plaintiffs do not challenge a restriction on their exercise of the referendum right, nor on the speech they may chose to employ to advocate its passage. Instead, plaintiffs seek to expand the scope of the referendum right itself. The people of Arizona did not delegate the referendum power to the legislature—they reserved that power to themselves. However, they did not elect to reserve it absolutely. Ariz. Const. art. IV, Part 1, § 1. Instead, they provided in the State Constitution that the referendum power is not applicable to laws passed under declaration of emergency. *Id.* § 1(3).

This is not a restriction, condition, or requirement that impermissibly burdens the exercise of the referendum power, thereby invoking the protection of the First Amendment. Instead, it is a delegation to the legislature by the people of a part of their reserved power of referendum. Thus, the emergency declaration by

itself does not implicate First Amendment concerns.

## C

 Finally, plaintiffs identify no constitutionally protected liberty interest created by operation of state law. Arizona law specifically provides for municipal ordinances passed by emergency declaration to be given immediate effect. *See* Ariz.Rev. Stat. § 19–142 (1991). Furthermore, the Arizona courts have ruled that "the determination by the legislature that an emergency exists is an exercise of legislative discretion not reviewable by the judiciary." *City of Phoenix v. Landrum & Mills Realty Co.*, 71 Ariz. 382, 227 P.2d 1011, 1013 (1951). Thus, Arizona has not created a referendum right to challenge an ordinance passed by emergency declaration.

In sum, plaintiffs have identified no federal or state right that the City violated in passing the ordinances with an emergency declaration. Thus, they cannot state a claim under section 1983. *Duffy v. Riveland*, 98 F.3d 447, 456 (9th Cir.1996). As a consequence, we affirm the district court's grant of summary judgment in the City's favor.

## III

At the core of their argument, plaintiffs propose that the federal courts serve as a factual arbiter of whether a true "emergency" exists as contemplated by the Arizona Constitution. Indeed, at oral argument, they suggested that this was an issue appropriately decided in each instance by a federal jury who would ascertain whether the requisite emergency actually existed and instruct municipalities accordingly. Such a role for federal courts strains the idea of cooperative federalism, to say nothing of its impact on state sovereignty. Certainly, the behavior of the City in attempting to thwart the spirit, if not the letter, of the Arizona Constitution is deplorable if true. However, plaintiffs' remedy lies in the Arizona state courts, or perhaps at the ballot box, not with a federal jury.

AFFIRMED.