Melissa D. Thiesing Neosho County Attorney 102 S. Lincoln, P. O. Box 370 Chanute, Kansas 66720
R. Kent Pringle, Legal Counsel Neosho County Community College P. O. Box 748 Chanute, Kansas 66720
Dear Ms. Thiesing and Mr. Pringle:
As Neosho County Attorney and legal counsel for the Board of Trustees of Neosho County Community College (NCCC), respectively, you request our opinion regarding issues related to a resolution of NCCC assessing an annual levy upon all taxable tangible property within the NCCC district for the purpose of providing monies for capital outlay. Specifically, you ask the following:
 1. Whether the petition seeking to bring the resolution to an election states the question in the form of a question as it should appear upon the ballot; and
 2. Whether the recital of the circulator contained at the end of the set of documents carried by the circulator complies with the requirements of subsection (b)(4) of K.S.A. 25-3602 (Furse).[1]
The capital outlay levy for NCCC has an eventful history. On November 13, 1997, the Board of Trustees for NCCC adopted a resolution assessing a levy that would provide monies for capital outlay. Petitioners in the NCCC district filed a petition on January 5, 1998, seeking to bring the resolution to an election. It was determined by the Neosho County Attorney that this petition did not meet the requirements of K.S.A. 25-3601et seq.[2] Because the time for filing petitions seeking to bring the resolution to an election had passed, the resolution became effective without a vote of the electorate. The Board of Trustees, however, determined that it was not in the best interests of NCCC at that time to assess the levy. The Board chose to rescind the resolution.
On April 12, 2001, the Board once again adopted a resolution assessing a levy for the purpose of providing monies for capital outlay. Petitioners filed a petition seeking to bring the resolution to an election. Because the petition was filed prior to July 1, 2001, amendments to K.S.A. 25-3601 et seq. that were adopted during the 2001 legislative session were not applicable to the petition.[3] The petition was in the following form:
 "PETITION "I, the undersigned, an elector residing in the voting district of the Neosho County Community College, in Neosho County, State of Kansas, and a duly registered voter, state that I am in opposition to the Resolution to Levy Tax and create Special Building Funds of the Board of Trustees of Neosho County Community College. Also, I hereby demand the question of, 'Should the Board of Trustees of Neosho County Community College make an annual tax levy for a period of not to exceed five (5) years of not to exceed two (2) mills upon all tangible property in the community college district for the purpose of construction, reconstruction, repair, remodeling, additions to, furnishing and equipping of school buildings, architectural expenses incidental thereto and the acquisition of real property for use as building sites or for educational purposes?', be placed on the ballot to be voted on at an election called for such purpose or at the next general election. I have personally signed this petition. I am a registered elector of the State of Kansas and of Neosho County Community [sic] voting district, and my residence address is correctly written after my name."[4]
The statement is followed by a grid containing spaces for "Signature of Signer," "Name of Signer (Print)," "Street Number or 911 Address," "City," and "Date."
The County Attorney determined the form of the question set forth in the petition met statutory requirements.[5] The petition was circulated, then filed with the Neosho County Election Officer. The County Election Officer determined the petition included the required number of signatures for bringing the resolution to an election. Based on the information provided, it appears that at this point, the Board of Trustees for NCCC questioned whether the petition met statutory requirements, but has not filed any challenge regarding its validity. It appears the Board of Trustees has not called an election at which the resolution would be submitted for approval by the electors.
The Board of Trustees for NCCC is authorized to make an annual tax levy, the purpose of which is to provide monies for "construction, reconstruction, repair, remodeling, additions to, furnishing and equipping of community college buildings, architectural expenses incidental thereto, and the acquisition of real property for use as building sites or for educational programs."[6]
 "No levy shall be made under [K.S.A. 71-501] until a resolution authorizing the levy is passed by the board of trustees and published once each week for three consecutive weeks in a newspaper having general circulation in the community college district. The resolution shall specify the mill rate of the tax levy and the period of time for which the tax levy shall be made under authority thereof. After adoption of the resolution, the levy may be made unless, within 60 days following the last publication of the resolution, a petition in opposition to the levy, signed by not less than 5% of the qualified electors of the community college district, is filed with the county election officer of the county in which the main campus of the community college is located. If a petition is filed, the levy shall not be made without the question of levying the same having been submitted to and approved by a majority of the qualified electors of the district voting at an election called for that purpose or at the next general election. If a petition is filed and no election is held, a new resolution authorizing a levy for the purposes specified in this section may not be adopted for a period of one year after the filing of the petition."[7]
K.S.A. 25-3601 et seq. set forth requirements that are to be met when state law requires or authorizes submission of a petition in order to bring a resolution before the electorate.
 "When under the laws of this state a petition is required or authorized as a part of the procedure applicable to . . . any . . . school district or other municipality, or part thereof, the provisions of [K.S.A. 25-3601 et seq.] shall apply, except as is otherwise specifically provided in the statute providing for such petition. . . . Before any petition other than a recall petition as described in K.S.A. 25-4301 et seq. and amendments thereto, requesting an election in any political or taxing subdivision of the state is circulated, a copy thereof containing the question to be submitted shall be filed in the office of the county attorney of the county . . . in which all or the greater portion of the political or taxing subdivision is located for an opinion as to the legality of the form of such question. The county . . . attorney shall within five calendar days following the receipt of such question furnish a written opinion as to the legality of the form of the question submitted. There shall be a rebuttable presumption that the form of any question approved by the county . . . attorney complies with the requirements of this act. When any statute makes specific provisions concerning matters that K.S.A. 25-3601 et seq. and amendments thereto also has requirements which are different therefrom, the provisions of the specific statute shall control. . . ."[8]
A petition seeking to bring an issue before the electorate must meet the requirements of K.S.A. 25-3601 et seq. as well as any requirements set forth in the statute authorizing the petition, except to the extent there is a conflict.[9] Therefore, the petition submitted prior to July 1, 2001, by petitioners seeking to bring to a vote a resolution adopted by the Board of Trustees for NCCC pursuant to K.S.A. 71-501 needed to meet the requirements set forth in K.S.A. 25-3601 et seq. and 71-501. The petition was required to "[s]tate the question which petitioners seek to bring to an election in the form of a question as it should appear upon the ballot in accordance with the requirements of K.S.A.25-620. . . ."[10] The petition was submitted as required by K.S.A. 25-3601 to the Neosho County Attorney. The Neosho County Attorney opined that the form of the question set forth in the petition complied with statutory requirements. At that time, a rebuttable presumption regarding validity of the form of the question attached.[11] The presumption remains until a party challenging the validity presents before a court of law sufficient evidence to the contrary.[12] Because an Attorney General opinion is neither conclusive nor binding on a court,[13] issuance of an opinion by the Attorney General regarding whether the form of the question set forth in the petition complies with statutory requirements will not override the presumption of validity that attached following the review of the form of the question by the Neosho County Attorney. We leave it to the Board of Trustees for NCCC to review opinions previously issued by the Attorney General and determine for itself whether it believes the petition fails to properly set forth the question sought to be brought to an election. In the absence of a determination by a court of law that the form of the question set forth in the petition submitted by petitioners does not meet statutory requirements, the form of the question is presumed valid.
Prior to July 1, 2001, each petition submitted pursuant to K.S.A.71-501 was required to:
 "[C]ontain the following recital, at the end of each set of documents carried by each circulator: `I am the circulator of this petition. I have personally witnessed the signing of the petition by each person whose name appears thereon. I am a resident and a registered elector of the state of Kansas and of (here insert name of political or taxing subdivision) , the political or taxing subdivision in which the election is sought to be held.
 "____________________________ "(Signature of circulator)
 "____________________________ "(Circulator's residence address)"[14]
 "It has consistently been determined that the provisions of K.S.A. 25-3601 et seq. are mandatory, and are not mere formalities that can be disregarded at will."[15] The requirements must, therefore, be met in order for the petition to be valid. Based on the information provided, the recital attached to the petitions does not include the phrase, "and a registered elector."
In Buckley v. American Constitutional Law Foundation, Inc.,[16] the United States Supreme Court reviewed whether three conditions applicable to Colorado's ballot initiative process violated the First Amendment's free speech clause. One of the conditions reviewed was the requirement that petition circulators be registered voters.
The First Amendment provides in part that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances." The Fourteenth Amendment makes that prohibition applicable to the states.[17]
 "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally. [The Court] ha[s] several times said `no litmus-paper test' will separate valid ballot-access provisions from invalid interactive speech restrictions; [the Court] ha[s] come upon `no substitute for the hard judgments that must be made.' But the First Amendment requires [the Court] to be vigilant in making those judgments, to guard against undue hindrances to political conversations and the exchange of ideas."[18]
 "Petition circulation . . . is `core political speech,' because it involves `interactive communication concerning political change.' First Amendment protection for such interaction . . . is `at its zenith.'"[19] This interest must be weighed against the interests of the states in ensuring the integrity of their elections. "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election and campaign related disorder."[20]
The State of Colorado asserted that voter registration "demonstrate[d] `commit(ment) to the Colorado law-making process,' and facilitate[d] verification of the circulator's residence."[21] The Court weighed the State's interests against the drastic reduction in the number of available circulators that was caused by the voter registration requirement.[22]
Colorado's "dominant justification" for requiring voter registration of petitioners was "its strong interest in policing lawbreakers among petition circulators. Colorado seeks to ensure that circulators will be amenable to the Secretary of State's subpoena power, which in these matters does not extend beyond the State's borders."[23] The Court noted that each circulator was required to complete an affidavit at the time each section of a petition was submitted. The affidavit included the address at which the circulator resided. "This address attestation . . . has an immediacy, and corresponding reliability, that a voter's registration may lack."[24] The Court determined the added registration requirement was not warranted. "That requirement cuts down the number of message carriers in the ballot-access arena without impelling cause."[25]
The requirement, therefore, "unjustifiably inhibits the circulation of ballot-initiative petitions."[26]
We review the impact of the U.S. Supreme Court's decision in Buckley on the petitioning process authorized in K.S.A. 25-3601 et seq. and 71-501 as that procedure existed prior to July 1, 2001. The authority of constituents of a community college district to bring a question regarding a capital outlay levy before the electorate is dependent initially on the board of trustees adopting a resolution authorizing a capital outlay levy.[27] The petitioning procedure established in K.S.A. 71-501 involves referendum, rather than initiative.[28]
However, for purposes of determining whether the First Amendment rights of circulators of a referendum petition are impermissibly restricted by a requirement that the circulators be registered voters, the free speech interests of potential circulators of a petition under referendum or initiative are indistinguishable.[29]
The requirement in K.S.A. 25-3602 (Furse) that a circulator be a registered elector was added in 1986.[30] Legislative history indicates that the amendment was requested by the Kansas Secretary of State "to clarify the petition process"[31] and to make it "consistent with other petition statutes."[32] Such purposes fail to justify the State's restriction on political speech.
A search of the statutes as they existed prior to the 2001 legislative session showed that only six statutes, including K.S.A. 25-3602 (Furse), required circulators of a petition to be registered electors. During the 2001 legislative session, all of the statutes were amended such that a circulator of a petition must be "a resident of the state of Kansas andpossess the qualifications of an elector of the state of Kansas."[33]
Circulators of petitions are no longer required to be registered electors. The amendment to K.S.A. 25-3602 (Furse) was requested by the Kansas Secretary of State in order to bring the statute into conformance with the ruling of the United States Supreme Court in Buckley. We, like the State Legislature and Secretary of State, are unable to conceive of a compelling reason for requiring circulators of a referendum petition to be registered electors. The provision in K.S.A. 25-3602 (Furse) was, therefore, unenforceable. The fact the circulator's recital attached to the petition filed in the NCCC district pursuant to K.S.A. 71-501 did not include the phrase "and a registered elector" does not affect the validity of the petition.
In review, the Neosho County Attorney opined that the form of the question set forth in a petition submitted pursuant to K.S.A. 25-3601 etseq. and 71-501 complied with statutory requirements. At that time, a rebuttable presumption regarding validity of the form of the question attached. The presumption remains until a party challenging the validity of the form of the question presents before a court of law sufficient evidence to the contrary. The provision in K.S.A. 25-3602 (Furse) that required a circulator of a petition submitted pursuant to K.S.A. 25-3601et seq. and 71-501 be a registered elector violated the free speech rights of the circulator and, therefore, was unenforceable in relation to a petition filed prior to July 1, 2001. The fact the circulator's recital attached to the petition filed pursuant to K.S.A. 71-501 did not include the phrase "and a registered elector" does not affect the validity of the petition.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Your request includes two additional questions. Given your concern regarding a timely response, those questions will be addressed in a subsequent opinion.
[2] See Attorney General correspondence addressed to Linus A. Thuston, January 26, 1998.
[3] See L. 2001, Ch. 128, § 14; L. 2001, Ch. 211, § 19.
[4] Emphasis original.
[5] Neosho County Attorney correspondence addressed to Bill Triplett, May 4, 2001.
[6] K.S.A. 71-501(a).
[7] Id.
[8] K.S.A. 25-3601.
[9] Attorney General Opinion No. 2000-29.
[10] K.S.A. 25-3602(b)(1) (Furse).
[11] K.S.A. 25-3601; Attorney General Opinion No. 96-78.
[12] See Shawnee Mission Med. Ctr. v. Kansas Dept. of Health Environment, 235 Kan. 983, 988 (1984); Karns v. Kansas St. Bd. ofAg., 22 Kan. App. 2d 739, 747 (1996).
[13] Unified School District No. 501 v. Baker, 269 Kan. 239, 249
(2000).
[14] K.S.A. 25-3602(b)(4) (Furse).
[15] Attorney General Opinion No. 95-28, citing Attorney General Opinions No. 92-136; 91-94; 90-71; 90-64; 86-51; 85-160; 84-41; 82-230; 81-230; 80-97; 79-290; 78-40; 77-303.
[16] 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999).
[17] Meyer v. Grant, 486 U.S. 414, 420, 108 S.Ct. 1886,100 L.Ed.2d 425 (1988).
[18] Buckley, 525 U.S. at 191-92 (internal citations omitted).
[19] Id. at 186-87, quoting Meyer, 486 U.S. at 422, 425 (internal citations omitted).
[20] Timmons v. Twin City Area New Party, 520 U.S. 352, 358-59,117 S.Ct. 1364, 137 L.Ed.2d 589 (1997).
[21] Buckley, 525 U.S. at 193 (internal citation omitted).
[22] Id. Based on figures provided by the U.S. Department of Commerce, Bureau of Census, it was estimated that less than 65% of voter-eligible residents of Colorado were actually registered, resulting in the exclusion of approximately 964,000 potential circulators. These figures were viewed as "not extraordinary in comparison to those proportions in other States."
[23] Id. at 196.
[24] Id.
[25] Id. at 197.
[26] Id. at 205.
[27] K.S.A. 71-501 (after adoption of the resolution, the levy may be made unless, within 60 days following the last publication of the resolution, a petition in opposition to the levy, signed by not less than 5% of the qualified electors of the community college district, is filed with the county election officer).
[28] See Black's Law Dictionary 705, 1152 (5th Ed. 1979).
[29] See Stone v. City of Prescott, 173 F.3d 1172, 1175 (C.A. 9th 1999).
[30] L. 1986, Ch. 141, § 1.
[31] Minutes, House Committee on Elections, February 20, 1986.
[32] Minutes, Senate Committee on Elections, January 29, 1986.
[33] K.S.A. 25-205, as amended by L. 2001, Ch. 211, § 4; 25-302a, as amended by L. 2001, Ch. 128, § 2; 25-303, as amended by L. 2001, Ch. 128, § 3; 25-3602, as amended by L. 2001, Ch. 211, § 8; 25-4306, as amended by L. 2001, Ch. 128, § 8; and 25-4320, as amended by L. 2001, Ch. 128, § 10 (emphasis added).